REGISTER PUBLISHING COMPANY,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 8354.

United States District Court
D. Connecticut.

Dec. 9, 1960.

Curtiss K. Thompson, of Thompson, Weir & Barclay, New Haven, Conn., for plaintiff.

R. Michael Duncan, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., James P. Garland and Jerome Fink, Washington, D. C., Harry W. Hultgren, Jr., U. S. Atty., Hartford, Conn., and W. Paul Flynn, Asst. U. S. Atty., New Haven, Conn., on the brief), for defendant.

TIMBERS, District Judge.

Defendant moves, pursuant to Rule 12 (b) (1), Fed.R.Civ.P., 28 U.S.C.A., to dismiss this action for lack of jurisdiction.

The action is brought, pursuant to 28 U.S.C. § 1346, to recover $124,927.14, plus statutory interest, representing deficiencies in income tax for the years 1957 and 1958 claimed to have been erroneously assessed and collected.

The crux of the controversy is whether the taxpayer, in filing its returns for the fiscal years ending October 31, 1957 and

October 31, 1958, was entitled to report its income, as it did, on a cash receipts and disbursements basis. Int.Rev.Code of 1954, § 446, 26 U.S.C.A. § 446.[1]

An agent of the Internal Revenue Service, relying on Treas.Reg. § 1.446–1 (a) (4) (i) (1954), insisted that the newspaper publishing business, in which the taxpayer is engaged, constituted the production and sale of merchandise which was an income-producing factor; that newsprint and type metal on hand at the beginning and end of each fiscal year should be taken into account in computing taxable income for each year; and that the taxpayer must use the accrual method of accounting with respect to purchases and sales, except for sales of newspapers.

The taxpayer claims to have entered into a compromise agreement with the Internal Revenue Service by which it agreed to pay, and on July 20, 1959 did pay, $124,927.14 additional income taxes assessed against it for the fiscal years ending October 31, 1957 and October 31, 1958 as a result of taking into account the taxpayer's supply of newsprint on hand at the beginning and end of each such fiscal year. The taxpayer further claims that as a part of the compromise agreement the Internal Revenue Service agreed not to require the taxpayer to use the accrual method of accounting with respect to purchases and sales by the taxpayer during the years involved.

The Internal Revenue Service, disputing the compromise agreement, proposed additional deficiencies in the taxpayer's income taxes for the fiscal years ending October 31, 1957 and October 31, 1958 solely as the result of using the accrual method of accounting with respect to the taxpayer's purchases and sales, excluding sales of newspapers, during the years involved.

On January 19, 1960 the taxpayer filed claims for refund of the sum of $124,927.14 which it had paid on July 20, 1959, plus statutory interest.

On March 28, 1960 the Internal Revenue Service sent its "thirty-day letter" to the taxpayer, together with a copy of the revenue agent's report disallowing the taxpayer's claims for refund.

On May 24, 1960 the taxpayer commenced the instant action to recover by way of refund the sum of $124,927.14, plus statutory interest, representing deficiencies in its income tax for the years 1957 and 1958 claimed to have been erroneously assessed and collected. The complaint as amended alleges that the taxpayer's claims for refund were disallowed on or about March 28, 1960.

On July 28, 1960 the government closed the pleadings by filing its answer, together with a motion to dismiss the complaint. The motion to dismiss is based on the "First Defense" set forth in the answer which reads:

"This action is barred by the statute of limitations contained in Section 6532(a) (1) of the Internal Revenue Code, in that it was filed before the expiration of six months from the date of filing of the claim for refund, and before the Commissioner of Internal Revenue has rendered a decision on this claim."

Section 6532(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6532(a) (1), provides:

"No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the

---

1. Income from the publication of the New Haven Register had been reported, for federal income tax purposes, on a cash receipts and disbursements basis for a period of 43 years prior to November 1, 1956, during which period the paper had been owned and published by Mr. John Day Jackson. On November 1, 1956, plaintiff corporation, which was organized October 23, 1956, acquired from Mr. Jackson, in exchange for shares of its capital stock, the properties constituting the newspaper enterprise known as The New Haven Register. Since November 1, 1956, Mr. Jackson has owned not less than a majority of the issued and outstanding shares of the capital stock of plaintiff.

date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

Since the present suit was begun May 24, 1960, before the expiration of six months from January 19, 1960, the date of filing the claims for refund, the motion to dismiss must be granted,[2] unless the "thirty-day letter", accompanied by the revenue agent's report, sent March 28, 1960 by the Internal Revenue Service, is to be construed as a "decision" by the Secretary or his delegate on the claims for refund within the meaning of Section 6532(a) (1).

This statutory six months period of limitation has been in the revenue laws for nearly forty years, having been first enacted in substantially its present language by Section 1318 of the Revenue Act of 1921, c. 136, 42 Stat. 315. The precise question here presented—whether a "thirty-day letter" is a "decision" within the meaning of this statute—does not appear to have been decided heretofore by any court,[3] nor has it been the subject of any Treasury Regulation.

The Court holds that the "thirty-day letter" is a "decision" within the meaning of Section 6532(a) (1) of the Internal Revenue Code of 1954.

Having been informed by counsel for the taxpayer and the government that the Court's decision on the question here presented is one of first impression, it appears incumbent upon the Court briefly to state its reasons for so holding:

(1) *The Plain Language Of The Statute Requires This Holding*

The statutory pattern is clear: it requires a six months waiting period between the filing of a claim for tax refund and the commencement of suit in a district court to recover on that claim *unless* "the Secretary or his delegate renders a decision thereon within that time."

The District Director of Internal Revenue for the District of Connecticut, who sent the thirty-day letter here in question, is a "delegate" of the Secretary of the Treasury. Int.Rev.Code of 1954, § 7701, 26 U.S.C.A. § 7701.

The statute requires, as a condition to the bringing of suit before the expiration of the six months period, that *a decision* be rendered within that time. It does not require more than one decision to be rendered within that time. It does not require a decision, plus action thereon by the Appellate Division within that time. In view of the length of time this language has been in the statute, this Court adheres to what it considers the plain language of the statute.

(2) *The Thirty-day Letter Unequivocally Disallowed The Taxpayer's Claim For Refund*

The thirty-day letter and the accompanying Internal Revenue agent's report

---

2. Acme Manifolding Co. v. United States, 16 Am.Fed.Tax R. 1016 (S.D.N.Y.1934); George E. Warren Co. v. United States, D.C.D.Mass.1944, 53 F.Supp. 578, 582; Handshoe v. Fox, 1 Am.Fed.Tax R.2d 301 (D.Md.1957); Roberts v. United States, 4 Am.Fed.Tax R.2d 6046 (S.D. Cal.1959).

3. In Skopil v. United States, 51 Am.Fed. Tax R. 1673 (D.Ore.1956), Judge Fee, sitting in the District Court by designation, stated (p. 1674) that a "letter of * * * [the] Director of Internal Revenue for the District of Oregon, was sufficient notice of a decision by the Com-

missioner of Internal Revenue as to the refund claim of plaintiffs under Internal Revenue Code § 3772." Examination of the court files in that case discloses that the "letter of * * * [the] Director of Internal Revenue" was not the standard "thirty-day letter"; it merely referred to the claim for refund and stated that, since an examination disclosed an issue considered in the tax determination which formed the basis of a previous closing by the Appellate Division in Seattle, no further consideration would be given to the claim. The Skopil case therefore is not in point.

constituted a decision disallowing the taxpayer's claims for refund.

The opening paragraph of the thirty-day letter reads:

"The attached report of examination, which takes into consideration the claim(s) for refund listed above, discloses no grounds for reduction in tax liability for the year(s) involved."

The accompanying Internal Revenue agent's report lists the taxpayer's claims for refund as follows:

"10/31/57   claim   disallowed   ($115,410.50)
10/31/58   claim   disallowed   (   9,516.64)"

⸺◆⸺

Further down on the same page, the agent's report states:

"This report is prepared to advise taxpayer that their claims as noted above have been disallowed."

On the next page of the agent's report, under the heading "Summary Of Proposed Adjustments", the taxpayer's claims for refund are scheduled as follows:

"10/31/57   (No change)   (Claim disallowed)
10/31/58   "     "       "       "   "

⸺◆⸺

Further down on that page, the agent's report states:

"In view of the fact that the taxpayer's method of accounting and reporting for tax purposes has been changed from the cash to the accrual basis, this report disallows their claims, Form 843, for refund of the additional tax assessed and paid as a result of the cost of good sold (inventory) adjustment as set forth in the R.A.R. dated 5/27/59.

"The claims are:

"Claim dated   1/19/60 in the amount of $115,410.50
"for F.Y.E. 10/31/57
"Claim dated   1/19/60 in the amount of     9,516.64
"for F.Y.E. 10/31/58

⸺◆⸺

"The taxpayer is not in agreement with the conclusions reached in this report"

It would be difficult to conceive of a more specific and unequivocal disallowance of the taxpayer's claims.

The government argues that the agent's report merely "recommends" disallowance of the taxpayer's claims; that the report refers to "Proposed Adjustments"; that the thirty-day letter advises the taxpayer that he may "protest" the proposed action to the Appellate Division; that the taxpayer still has an administrative remedy which he can pursue if he wishes; and that "The Commissioner can, of course, change his mind on review or further reconsideration."

The Court finds nothing in the record to support the government's contention that the agent's report merely "recommends" disallowance of the taxpayer's claims. It was sent, together with the thirty-day letter, to advise the taxpayer that his claims had been disallowed. The so-called "Proposed Adjustments" consisted of a reassertion that both claims were disallowed.

The government's argument that the thirty-day letter advises the taxpayer that he "may file a protest" which "will be given careful consideration and, if requested, a conference will be arranged with the Appellate Division", does not render the thirty-day letter any less of a "decision" within the meaning of Section 6532(a) (1). Viewed in the light most favorable to the government, the thirty-day letter does notify the taxpayer that he may protest the decision disallowing his claims and that the Appellate Division will consider his protest.

This Court has held that the sending of the thirty-day letter starts running the *two year period of limitation,* beyond which the taxpayer cannot bring suit to recover a refund. Beardsley v. United States, D.C.D.Conn.1954, 126 F.Supp. 775.[4] There appears no reason for holding, therefor, that the sending of the thirty-day letter does not terminate the *six months period of limitation* (provided in the same section of the Code), before the expiration or termination of which suit cannot be brought.

(3) *Elimination Of Unnecessary Delay In Administrative Proceedings Is Consistent With The Public Interest*

In providing for the six months waiting period between the filing of a claim for tax refund and the commencement of suit in a district court to recover on that claim, Congress obviously intended to allow the Internal Revenue Service a reasonable period of time within which to process the claim and to render a decision allowing or disallowing the claim in whole or in part before being called upon to defend in a district court against a suit brought on that claim. Gerrard v. Campbell, D.C.N.D.Ill.1949, 81 F.Supp. 752.

By the same provision of the statute, however, Congress also intended that if a decision should be rendered on the taxpayer's claim for refund within the six months period, the taxpayer should be free to commence suit in a district court from the moment that decision is rendered and without marking time until the expiration of the balance of the six months period.

In short, once the taxpayer's claim for refund has been disallowed by the sending of the thirty-day letter, as in the instant case, the taxpayer has the option either of filing a protest with the Appellate Division or of commencing a suit for refund in a district court. If, as in the instant case, the taxpayer elects to bring suit in a district court on his claim for refund, there is no reason why he should delay the commencement of that suit until the expiration of the balance of the six months period following receipt of the thirty-day letter.[5]

4. The two year period of limitation in the Beardsley case, which started to run with the sending of the thirty-day letter (referred to as a notice of "reaffirmance" of the disallowance of the taxpayers' claims), was found in Section 3772(a) (2) of the Internal Revenue Code of 1939, 53 Stat. 465, 26 U.S.C.A. § 3772(a) (2). This is the predecessor of Section 6532(a) (1) of the Internal Revenue Code of 1954.

5. The government has directed the Court's attention to the "Waiver of Statutory Notice of Claim Disallowance" (Form 2297) which was executed by the taxpayer on May 12, 1960. This waiver, executed pursuant to § 6532(a) (3) of the Internal Revenue Code of 1954, waived the requirement under § 6532(a) (1) of the Code that a notice be sent by certified mail or registered mail to the taxpayer. The government particu-

larly directs the Court's attention to the following note at the foot of this form of waiver: "The submission of this waiver within six months from the date a claim was filed will not permit the filing of a suit for refund with respect to such claim before the six month period has lapsed." This note is based on Treas. Reg. § 301.6532–1(c) (1954).

Execution by the taxpayer of this waiver is irrelevant to the question before the Court on the instant motion. The taxpayer does not claim that the filing of this waiver permitted the filing of suit for refund in the district court; the taxpayer relies on the thirty-day letter of March 28, 1960 as authorizing commencement of suit in the district court.

Moreover, neither the note at the foot of the waiver nor the Treasury Regulation upon which that note is based, could alter the provision of the statute author-

The nature of the controversy between the taxpayer and the Internal Revenue Service in the instant case points up the wisdom of eliminating unnecessary delay in concluding proceedings at the administrative level, thus leaving the taxpayer free to pursue his remedy in a district court. At issue in this controversy is the method of accounting to be used by the taxpayer in reporting its income: on a cash receipts and disbursements basis or on an accrual basis. Involved in this case are the taxpayer's two fiscal years ending October 31, 1957 and October 31, 1958. The outcome of this case will affect the taxpayer's subsequent fiscal years, two of which have been concluded (on October 31, 1959 and October 31, 1960) since the assessment and collection of the deficiencies involved herein. Certainly the taxpayer should be entitled to as prompt a decision as possible on a matter so vital to the orderly conduct of its business. Having elected to seek that decision in a district court after having had its claims for refund disallowed by the Internal Revenue Service, the taxpayer is asking no more than what Congress clearly has granted: immediate access to a district court upon disallowance by the Internal Revenue Service of its claims for refund.

The Court cannot accept the government's construction of this statute—requiring the taxpayer to mark time during the interval between receipt of the thirty-day letter and expiration of the six months period before suit can be brought in a district court—on the theory that the taxpayer has not exhausted his administrative remedy as long as "The Commissioner can, of course, change his mind on review or further reconsideration." [6] Congress clearly intended in this statute to balance, on the one hand, the desirability of a reasonable period of time within which the Internal Revenue Service should be permitted to process a claim for refund and render a decision thereon, against the equally vital consideration, on the other hand, of speed in the administrative process reflected by its granting to the taxpayer immediate access to a district court upon the rendering of a decision on the claim for refund before the expiration of the six months period. Elimination of unnecessary delay in the administrative process is in accord with the intent of Congress reflected in this statute and is consistent with the public interest.[7]

Defendant's motion to dismiss this action for lack of jurisdiction is denied. An order has been entered accordingly.

izing commencement of suit in the district court upon the rendering of a decision by the Secretary or his delegate within the six months period. Int.Rev. Code of 1954, § 6532(a) (1).

6. In ascertaining whether an administrative remedy has been exhausted for purposes of determining the reviewability of an administrative order, a final order need not necessarily be the very last order. Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, 55 at note 17, certiorari denied Japan Atlantic & Gulf Conference v. United States, 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L. Ed. 1124. For a criticism of the rule of exclusive primary administrative jurisdiction, see Convisser, Primary Jurisdiction: The Rule And Its Rationalizations, 65 Yale L.J. 315 (1956).

7. The President's Conference On Administrative Procedure, in which the Bureau of Internal Revenue participated, recommended elimination of unnecessary delay and expense in the administrative process. 19 F.R.D. 45, 52–53 (1957). In its Comment on Recommendation E.1., at 66 (1955), the Report stated:

"This Recommendation is the underlying philosophical declaration of the Conference. It speaks only of delay, expenses, etc. which are unnecessary. It speaks in terms of the public interest— not the interest of parties, governmental or private. It presents a reversal of a growing attitude toward these long proceedings. It emphasizes the public importance of efficiency in the administrative process. Many procedural consequences flow from this basic concept."