Robert L. MILLER and Mildred M. Miller,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 4487.

United States District Court
D. Wyoming.

March 9, 1962.

James A. Greenwood and John W. Pattno, Cheyenne, Wyo., for plaintiffs.

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., and Burton A. Schwalb, Atty., Dept. of Justice, Tax Div., Washington, D. C., for defendant.

KERR, District Judge.

In this action taxpayers seek to recover the sum of $64,000.00 which they allege is wrongfully withheld from them by the government. They contend that their remittances to the United States government in 1953 and 1954 did not amount to tax payments since no taxes were due nor had any tax assessments been made for the years 1952 and 1953. They conclude, therefore, that their claim for a refund is not barred by Section 322 of the Internal Revenue Code of 1939, 26 U.S.C. § 322. Stated conversely, this is an action to recover moneys paid to the government on the erroneous belief that taxes might be due in the years 1953 and 1954 when in fact no taxes were assessed or due for the taxable years in issue.

It is the government's position that a tax assessment was made against the taxpayers; that their two checks dated January 15, 1953 and January 14, 1954, each in the amount of $32,000.00 constituted full payment of their estimated income tax for those years; and that even assuming the correctness of taxpayers' return filed on or about February 15, 1960, showing no tax due in 1952 and 1953, nevertheless they are not entitled to a refund because the statute of limitations has run against their claim.

Jurisdiction of this court is invoked under Title 28 U.S.C. §§ 1340, 1346(a), and 1402(a). Certain facts were stipulated by the parties and the disputed issues were tried by the court.

The ultimate issue to be resolved is whether or not taxpayers are precluded from recovering their remittances under the three year limitation prescribed by Section 322 of the Internal Revenue Code of 1939. In order to determine the timeliness of the claim for refund, the questions before this Court are whether or not the remittances constituted a "payment" of income tax within the purview of the 1939 Code. The answer to this question turns on whether or not a tax assessment was made against taxpayers according to law, and if so, was it in fact paid in full by the aforementioned checks in the sum of $32,000.00 each.

The chronology of events shows that taxpayers remitted $32,000.00 to the Director of Internal Revenue by a check dated January 15, 1953, and the next year they remitted another check dated January 14, 1954, for the same amount. No federal income tax return nor tax document accompanied these remittances. On the 1953 check plaintiffs wrote the words "For income tax", and on the 1954 check was written "Income tax estimate". There were no indicia on the checks or otherwise that they were intended to serve as an income tax return, as a declaration of estimated tax due, or that they were payments in full of the total amount of income tax due from plaintiffs, who thought their attorney had duly filed the returns.

Upon receipt of these checks the accounting division of the Internal Revenue Service in Cheyenne, Wyoming, made an index card in plaintiffs' names, assigned them account numbers, and stamped the account number with the prefix "EF" on the checks and on the index cards. The amount of the checks was then credited to the estimated tax accounts of plaintiffs for the years 1952 and 1953. At the time of making these remittances there were no official records or documents to indicate that taxpayers owed any income tax;

no tax return had been filed; no declaration of estimated tax had been filed; and there had been no assessment of a definite tax obligation against taxpayers for the years 1952 and 1953. As of the date of the trial hereof no tax liability had yet been assessed against them for those taxable years.

On February 15, 1960, plaintiffs filed income tax returns for the years 1952 and 1953 showing no tax due. Simultaneously they filed their claim for a refund of the $64,000.00, which claim was disallowed on March 2, 1960, on the ground that it was filed too late. It is the government's position that the three year period of limitations in Section 322 (b) of the Internal Revenue Code of 1939 applies to refunds of payments of estimated income taxes and therefore plaintiffs are precluded from recovering their 1953 and 1954 payments.

The parties agree that the two $32,-000.00 checks were for estimated income tax. There is a difference of opinion, however, concerning the purpose and effect of the remittances. Contending that their checks were made as deposits toward an income tax yet to be estimated, determined and assessed, plaintiffs disagree with the propriety of the government's processing of the checks as if they were payments of taxpayers' full estimated income tax.

■ In the absence of the formal tax assessment or income tax return at the time the checks were received, the government attempts to prove by deduction that an assessment was made in the natural course of events after receipt of the checks. It deduces that the $32,000.-00 payments were "full" payments of estimated tax because the government had no record of prior partial payments. It maintains also that because taxpayers are cattle ranchers it was logical to conclude that they were paying their full tax obligation in one lump sum. The United States painstakingly introduced evidence to show that the payments by taxpayers were indentified by the "EF" account number assigned to them, that such account number shows their full payment of

the estimated tax, that their account number on the assessment list shows their payment, that the amount on the assessment list was transferred to the journals, and finally, that the amounts on the journals were transferred to the certificate of assessment. It concludes that it was this execution of Form 23C, the certificate of assessment, which constituted the assessment of the tax liability against taxpayers.

I cannot concur in such conclusion. There is no logical or statutory rule which permits the assessment of tax due after it purportedly has been paid in full. The government attempts to distinguish Rosenman et al., Executors v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), by arguing that in 1953 and 1954 the assessments against these plaintiffs were made by the certification of the assessment included in the lists on which were taxpayers' payments of $32,000.00 each. This is incongruous. It is the formal assessment by the Commissioner which "represents the Director's authority to *enforce collection of taxes not yet paid*". (Emphasis added.) United States of America v. Dubuque Packing Company, 8 Cir., 1956, 233 F.2d 453, 457; Thomas v. Mercantile Nat. Bank at Dallas, 5 Cir., 1953, 204 F.2d 943.

■ In the case at bar the purported assessment claimed by the government was effectuated after payment of the money by the taxpayers and it was based upon the amount they remitted. This manner of assessment does not start the running of the statute of limitations. In the case of Davidovitz v. United States, 1932, 58 F.2d 1063, 75 Ct.Cl 211, it was stated that all the revenue acts since 1916 have required the Commissioner of Internal Revenue "to determine and assess" the amount of taxes due under any return. This court cannot now say that it will suffice for the Commissioner to assess taxes before a return is filed merely because a payment of money has been received in the District Office.

■ There is no statutory authorization for the determination of tax liability on the basis of the amount of money remitted by the taxpayer. It is an elementary observation that the amount of income tax due the United States must be computed according to recognized accounting procedures and pursuant to the applicable taxing statutes.

The government did not show how the accounting branch in the District Director's Office in Cheyenne, Wyoming, determined that the amount remitted by taxpayers entirely covered their tax liability, or why the "EF" account number was assigned to indicate the full payment of their estimated tax. The officer in charge of accounts in the Cheyenne District Office during the years in issue testified that there was no record in the Cheyenne office showing any tax obligation of the plaintiffs on or about either January 15, 1953, or January 14, 1954. The evidence clearly showed that prior to the payment of the money plaintiffs' tax liability had never been determined or even estimated pursuant to accepted accounting methods and statutory procedure.

The government argues that the decision in the case of William Woods Plankinton v. United States of America, 7 Cir., 1959, 267 F.2d 278, 280, is consistent with and supports the government's position in the case at bar. It is pertinent to point out, however, that in the Plankinton case the government conceded that "generally remittances made prior to the time the taxpayer's liability is defined do not constitute 'payment' of a tax for the purpose of commencing the limitation period on refund claims".

The government further distinguishes the Rosenman case from the case at bar on the fact that plaintiffs' remittances were not mere advance payments or deposits because they were not placed in the Suspense Account. Such reasoning is circuitous. There is no evidence to validate the Director's decision not to place the deposits in the so-called Suspense Account, and not to consult with the taxpayers to ascertain what they intended to accomplish by making the remittances. The act of not placing the

funds in the Suspense Account but instead entering them directly to the account of the taxpayer does not alter the essence of the payment. Thomas v. Mercantile Nat. Bank at Dallas, 5 Cir., 1953, 204 F.2d 943.

The payment of money is not identical to the payment of tax. Rosenman et al., Executors v. United States, supra; Atlantic Mutual Insurance Company v. McMahon, S.D.N.Y.1957, 153 F.Supp. 48. The words "payment" or "paid" are not words of art. They are used in every day parlance as money given to discharge a debt or obligation. In the absence of any evidence of a determined income tax obligation, the only conclusion possible under the facts before me is that the remittances were voluntarily made as deposits to be utilized by the government in the event a tax obligation were subsequently defined and imposed. If no tax liability is satisfied in whole or in part by the taxpayers' remittances they should not be processed as payments of a tax. The oft-quoted remarks of the United States Supreme Court in the Rosenman case are applicable to the present situation:

> "The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." (323 U.S. 658, at page 662, 65 S.Ct. 536, at page 538.)

As in the Rosenman case, the payment of the money in January of 1953 and 1954 did not discharge a tax debt and therefore could not be a payment of a tax debt which was not defined until 1960. The occasion which gives rise to plaintiffs' complaint is the retention by the government of the $64,000.00 after their income tax returns were finally filed in 1960. Not until then was there a declaration of "no tax due". Not until then did a claim arise which could start the running of the statute of limitations. Clearly, taxpayers acted in a timely manner in asserting their claim to a refund.

■ Nothing in the record justifies the department's assumption that the checks were remitted by taxpayers in full payment of tax or of estimated income tax due from them. The deposits of the $64,000.00 to which the government has no claim as a tax liability of taxpayers must be refunded to them. The statute of limitations has no application because as yet no tax obligation has been assessed and no tax has been paid. Restitution, therefore, is not only fair and equitable but imperative.

■ Taxpayers seek to recover, also, interest on the $64,000.00 held by the government since February 15, 1960, when plaintiffs filed their refund claim. Interest accrues from the date of payment of the tax obligation. Atlantic Mutual Insurance Company v. McMahon, supra, and cases cited therein. A voluntary deposit to be held by the government in the eventuality that a tax obligation may be ascertained does not amount to a payment which would entitle taxpayers to the recovery of interest on their money so deposited. Manee et al. v. United States, S.D.N.Y., 1951, 97 F.Supp. 993. A contrary rule would be unjust as it would make the government liable for interest payments on any amount a taxpayer might elect to deposit with the Collector. Murphy et al. v. United States, S.D.Calif., 1948, 78 F.Supp. 236.

Plaintiffs have merely filed their tax return and this is only a preliminary act to the assessment of taxes due. There has still been no formal assessment which would create the tax liability against them. It cannot be said, therefore, that the money on deposit with the govern-

ment constitutes "payment" of their tax debt if such there proves to be, or that it constitutes an "overpayment" of such tax debt if there appears that no tax is due. Consequently there can be no meritorious claim for an overpayment of taxes.

Taxpayers are not entitled, therefore, to interest from February 15, 1960, when they filed their 1952 and 1953 tax returns.

Counsel for plaintiffs will prepare findings of fact and conclusions of law in accordance with this memorandum and submit the same, together with judgment, within fifteen (15) days from this date, and the clerk will enter an order accordingly.