UNITED STATES of America, Appellant,

v.

Robert L. MILLER and Mildred M. Miller, Appellees.

No. 7100.

United States Court of Appeals Tenth Circuit.

March 1, 1963.

Rehearing Denied April 1, 1963.

Michael A. Mulroney, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, and Arthur I. Gould, Attys., Dept. of Justice, Robert N. Chaffin, U. S. Atty., and Leroy V. Amen, Asst. U. S. Atty., were on the brief), for appellant.

James A. Greenwood, Cheyenne, Wyo., for appellees.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The issue is whether the appellee taxpayers can recover a total of $64,000 mistakenly paid by them as estimated federal income tax for years when they owed no tax. The trial court overruled the defense of the statute of limitations asserted by the government and gave the taxpayers the judgment which they sought.[1]

The applicable statute of limitations, § 322(b) of the Internal Revenue Code of 1939, provides in its subsection (1) that a claim for refund must be presented within three years from the time of the filing of a return and in its subsection (2) (A) that a refund shall not exceed the tax paid during the three years immediately preceding the filing of the claim.[2] The government concedes that the claims were filed within three years of the returns and relies solely on subsection (2) (A) which limits the refund to the tax paid in the three years immediately preceding the filing of the claim. Application of § 322(b) (2) (A) prevents recovery as the payments were made more than three years before the filing of the claims.

The issue is the applicability of the statutory limitation asserted by the government to the facts of this case. Relying on Rosenman et al., Executors, v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the taxpayers contend that the two $32,000 checks were voluntary remittances and not tax payments because no tax obligation arose upon which an assessment could be made, or a tax paid, until the returns for the two years in question were filed. The government denies the applicability of the Rosenman decision and says that the checks were sent to discharge the obligation of the taxpayers under the Current Tax Payment Act of 1943,[3] to which reference will be made later, and that an assessment was in fact made.

The pertinent facts are not disputed. The taxpayers, husband and wife, are in the ranching and livestock business in Wyoming. On January 15, 1953, they sent a check for $32,000 to the Director

---

1. The opinion of the trial court is reported at 202 F.Supp. 650.

2. Section 322(b) as amended, appears at 26 U.S.C. § 322(b), 1952 ed., and so far as material reads:

"(b) Limitation on allowance. (1) Period of Limitation.

Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

"(2) Limit on amount of credit or refund.

"The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim."

3. c. 120, 57 Stat. 126 (1943), as amended.

of Internal Revenue. The check bore the notation "For income tax." On January 14, 1954, they sent another check which was for $32,000, was payable to the Director, and bore the notation "Income tax estimate." Neither check was accompanied by a federal income tax return or any other tax document. Each check was deposited to the account of the Treasurer of the United States and duly paid by the bank upon which drawn. The Director credited each check to the taxpayers' account as representing their full payment of estimated tax for the taxable years 1952 and 1953, respectively.

When each check was received by the Director, nothing in his office revealed that the taxpayers owed any tax for the respective tax years. No declarations of tax and no returns had been filed, although the taxpayers believed that their attorney had filed such returns.

After the receipt of the taxpayers' checks and in accordance with routine procedures, the Director's office prepared index cards bearing identifying numbers. From these cards the amount of each check was posted on the assessment list (Treasury Form 23E). The daily information shown on all assessment lists was summarized and recorded in the daily journal. The monthly totals of the daily journal were summarized and posted to the assessment certificate (Treasury Form 23C) which, an officer of the Internal Revenue Service testified, "records the official action of the assessment officer who makes the assessment against the taxpayers." The assessment certificates were dated, respectively, February 6, 1953, and February 5, 1954.

On February 15, 1960, the taxpayers filed returns for 1952 and 1953 showing no income tax due in either year. Neither of these returns has been disapproved or rejected. The tax authorities have not determined that the taxpayers owed any federal income tax for the years 1952 and 1953.

At the same time they filed their returns for 1952 and 1953, the taxpayers filed claims for refunds in the amount of $32,000 for each year. The refund claim for 1952 says that the $32,000 remittance to the Director was "paid on January 15, 1953, for Declaration of Estimated Tax for year 1952." Except for difference in dates a similar statement was on the refund claim for the year 1953. The refunds were disallowed on the ground that the amounts claimed were barred from refund by the statutory period of limitations. Taxpayers then brought this suit to recover.

■ The manner in which the two checks were handled in the Director's office is not dispositive of the case. We express no opinion as to the validity or propriety of the procedures followed. As we appraise the situation, the unilateral actions of the Director made without the knowledge or acquiescence of the taxpayers do not determine whether the checks were voluntary remittances or were in discharge of an obligation imposed by the federal income tax statutes.

The Current Tax Payment Act of 1943 requires a declaration of estimated income tax[4] and the payment of that estimated tax.[5] When the declaration is permitted to be filed after September 15 of the taxable year and is so filed, the estimated tax must be paid in full at the time of the filing of the declaration.[6] An individual deriving at least two-thirds of his gross income from farming, may file the declaration at any time on or before January 15 of the succeeding taxable year.[7] The taxpayers in the instant suit were within the classification of farmers, had until January 15 of the succeeding taxable year to file their declaration, and were required to pay the amount in full at the time of the filing of the declaration.

Section 322(e) of the 1939 Internal Revenue Code, as amended by the Current Tax Payment Act of 1943 and the

4. 26 U.S.C. § 58(a), 1952 ed.

5. 26 U.S.C. § 59, 1952 ed.

6. 26 U.S.C. § 59(a) (4), 1952 ed.

7. 26 U.S.C. § 60(a), 1952 ed.

Individual Income Tax Act of 1944, provides in part:[8]

" * * * For the purposes of this section, any amount paid as estimated tax for any taxable year shall be deemed to have been paid not earlier than the fifteenth day of the third month following the close of such taxable year."

In its consideration of the Current Tax Payment Act of 1943, Congress recognized the desirability of fixing a definite date on which estimated tax payments would be deemed paid for purposes of the refund limitations of § 322.[9] Congress considered that the establishment of such a date was "in the interest of certainty and administrative feasibility.[10]

The parties stipulated that the amount for which recovery is sought was "paid as estimated tax for the years 1952 and 1953." The Current Tax Payment Act of 1943 imposed a duty on the taxpayers to declare their estimated tax and to pay the amount thereof. Section 322(e)

fixes the presumptive date of payment for the purpose of the application of the provisions of § 322(b) relating to the limitations on refunds and credits. In the case at bar the presumptive dates are more than three years prior to the filing of the claims for refunds.

Argument that § 322(b) (2) (A) does not apply when no tax is in fact due is foreclosed by a provision of the Current Tax Payment Act of 1943 which, as amended, appears at 26 U.S.C. § 3770(c), 1952 ed., and reads:

"An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

The purpose of this section was to assure that "mistakes both as to the amount of the tax and as to the existence of any tax liability * * * are to be corrected under the provisions of law governing overpayments."[11] In the case at bar

8. 26 U.S.C. § 322(e), 1952 ed.

9. See S.Rep. No. 1631, 77th Cong., 2d Sess., 1942–2 Int.Rev.Cum.Bull., 504, 632; S.Rep. No. 221, 78th Cong., 1st Sess., 1943 Int.Rev.Cum.Bull., 1314, 1339, 1343; H.Conf.Rep. No. 510, 78th Cong., 1st Sess., 1943 Int.Rev.Cum.Bull., 1351, 1367, 1371.

10. 1942–2 Int.Rev.Cum.Bull., 504, 632. The House Conference Report No. 510, supra, 1943, Int.Rev.Cum.Bull., 1351, 1371, U.S.Code Cong. Service 1943, p. 2.-68, says: "All such payments of estimated tax are for the purpose of the provisions of law relating to refund or credit of the tax imposed by Chapter 1, including the provisions relating to interest on overpayments of such tax, deemed to have been paid on the 15th day of the third month following the close of the taxable year."

11. S.Rep. No. 221, 78th Cong., 1st Sess., 1943 Int.Rev.Cum.Bull., 1314, 1339–1340, says:

"The income tax law requires the taxpayer to make a return of his tax and to pay the tax so returned. These requirements contemplate that in the discharge of these duties at the time, place, and manner prescribed honest mistakes will

occur—mistakes both as to the amount of the tax and as to the existence of any tax liability; and that such honest mistakes made incident to the bona fide orderly compliance with the actual or reasonably apparent duties of the taxpayer are to be corrected under the provisions of law governing overpayments. In the opinion of your committee, existing law so provides. The language of certain court decisions (holding that certain payments, not made incident to a bona fide and orderly discharge of actual or reasonably apparent duties imposed by law, are not overpayments and accordingly that interest is not payable) has been read by some as meaning that no payment can result in an overpayment if no tax liability actually existed. Your committee does not believe that such reading is in any way a statement of existing law. The provisions of the bill, however, emphasize the need for clarity in this regard.

"Under the bill as reported by your committee, two requirements become basic features of the income tax: (1) the declaration and payment of the estimated tax; and (2) the withholding and collection by the employer of tax from the wages of employees, and the return and payment as such of the

the taxpayers made a mistake as to their tax liability. Congress has said that the amount so paid shall be treated as an overpayment. The refund and credit of overpayments are governed by § 322 and are subject to the limitations found in § 322(b) (2) (A).

The taxpayers' claim that the statute of limitations is inapplicable is grounded on the theory that the checks were voluntary remittances and hence, under the Rosenman decision, were not within the purview of the statute. Rosenman was concerned with an estate tax. The executors paid $120,000 "under protest and duress, and solely for the purpose of avoiding penalties and interest." The Commissioner denied a claim for refund made more than three years later and the Court of Claims upheld his denial. The Supreme Court reversed [12] holding that the $120,000 remittance was a payment "in escrow" and a "deposit arrangement" and not a payment in discharge of what the taxpayer deemed to be a liability or of a liability that was asserted. The Court observed that the transaction was not one which would give rise to a claim against the government for interest and could not be a payment to bar suit by the taxpayer for its illegal retention because "it will not do to treat the same transaction as payment and not as payment, whichever favors the Government." Significantly the Court said that it did not need to consider the effect of the Current Tax Payment Act of 1943.

Turning to decisions of other federal appellate courts since Rosenman, Thomas v. Mercantile Nat. Bank at Dallas, 5 Cir., 204 F.2d 943, and United States v. Dubuque Packing Company, 8 Cir., 233 F.2d 453, were cases in which the taxpayers voluntarily made deposits to prevent the accrual of interest on possible deficiencies. Moskowitz v. United States,

Ct.Cl., 285 F.2d 451, was an action to recover an amount paid as an offer in compromise. Roles v. Earle, 9 Cir., 195 F.2d 346, certiorari denied 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637, was a suit against a collector to recover "a voluntary payment by the taxpayer made purely for his own convenience." In Lewyt Corp. v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 518, modified on other grounds, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, the court held that a taxpayer was not entitled to have remittances treated as satisfaction of tax liabilities and at the same time contest its liability therefor and said that the remittances were no more than deposits.

Plankinton v. United States, 7 Cir., 267 F.2d 278, was an action for refund of tax overpayments. The court recognized the applicability of the refund limitation imposed by § 322(b) (2) (A) and the presumed date of payment fixed by § 322(e) but held that the presumed date of payment was extended when the time for the filing of the return had been extended and the return subsequently filed within the extended time. In Schmidt v. Commissioner of Internal Revenue, 9 Cir., 272 F.2d 423, the court assumed, we believe erroneously, that estimated income tax payments were not subject to the refund limitation provisions. Hill v. United States, 3 Cir., 263 F.2d 885, was a suit to recover an overpayment of estate taxes resulting from the omission from the return of certain deductions to which the estate was entitled. Recovery was held barred by the statute of limitations.

We have a case of mistake. The taxpayers believed that they had an obligation to pay estimated income taxes. The notations on the checks show this.

---

amount by the employer to the Government. Honest mistakes incident to faithful and orderly compliance will, of course, occur, just as they have in the older procedures of the tax. The doubts expressed as to the existence of an overpayment in case it ultimately turns out

that there is no tax, your committee believes, should be put to rest, and to this end submits the amendment to section 3770 of the Code."

12. 323 U.S. 658, 662–663, 65 S.Ct. 536, 89 L.Ed. 535.

The returns, subsequently filed and not now questioned by the government, revealed the mistake. The issue is narrowed to whether the limitation on refunds imposed by § 322(b) (2) (A) applies to overpayments made by way of mistake. We think that it does.[13]

To summarize, under the applicable provisions of the Current Tax Payment Act of 1943, the taxpayers had an obligation to make a declaration of estimated income tax. In their situation the payment was due when the estimate was filed. Section 322(e) fixes the presumptive date of payment of estimated income tax and nothing is shown to rebut that presumption. Section 3770 was enacted to assure that mistakes as to the amount and existence of tax liability are controlled by the provisions governing overpayments.[14] That section says that non-liability for tax does not remove the amount paid from the category of an overpayment. Congress intended to assure that overpayments because of mistake would draw interest. At the same time it placed a limit on the recovery.

We hold that recovery is barred by § 322(b) (2) (A). The alleviation of hardship resulting from the application of a statute of limitations is a matter of policy for Congress—not for the courts.[15]

Reversed.

**13.** In Jones, Collector of Internal Revenue, v. Liberty Glass Co., 332 U.S. 524, 531, 68 S.Ct. 229, 233, 92 L.Ed.2d 142, the Supreme Court in referring to § 281 of the 1924 Act, which was carried through to § 322 of the 1939 Code, said: " * * * we read the word 'overpayment' in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment."

**14.** Note 11, supra.

**15.** The Supreme Court, in upholding the bar of § 322(b) (1) to the recovery of an overpayment, said in Kavanagh, Collector of Internal Revenue, v. Noble, 332 U.S. 535, 539, [68 S.Ct. 235, 237, 92 L.Ed. 150]: " * * * the loss which he [the taxpayer] now suffers from an application of § 322(b) (1) is a loss which is inherent in the application of any period of limitations. Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. Rosenman v. United States, 323 U.S. 658, 661 [65 S.Ct. 536, 89 L.Ed. 535]. Remedies for resulting inequities are to be provided by Congress, not the courts."