**Mary T. TREVELYAN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 8178.**

United States District Court
D. Connecticut.
July 18, 1963.

John H. Weir, of Thompson, Weir & Barclay, New Haven, Conn., for plaintiff.

Jay E. Orlin, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Rufus E. Stetson, Jr., Washington, D. C., Robert C. Zampano, U. S. Atty., New Haven, Conn., on the brief), for defendant.

TIMBERS, District Judge.

Cross-motions for summary judgment,[1] pursuant to Rule 56, Fed.R.Civ. P., in this action for refund of $9,510.32 of federal income taxes, raise the question whether the statute of limitations begins to run with the filing of declarations of estimated tax and payments of such estimated tax (as defendant contends) or with the filing of the final returns (as plaintiff contends).

The Court holds that the statute of limitations begins to run with the filing of the final returns; that plaintiff's claims for refund were filed within the time allowed by statute; and that accordingly plaintiff's motion for summary judgment is granted, defendant's is denied.

## FACTS

The facts are not in dispute.

Plaintiff, a United States citizen, has lived in Great Britain since 1936, the year she married a British subject.

Her attorney in the United States [2] filed declarations of estimated income tax on her behalf for each of the years 1944 through 1953; paid the estimated tax in quarterly installments; but did not file final returns for these years until 1957.

The reasons for this procedure are as follows. During the tax years involved, plaintiff's financial affairs in Great Britain were handled by the Royal Bank of Scotland, Drummond's Branch. Judge MacDonald was not able until 1955, despite repeated requests, to obtain from the Bank information with respect to plaintiff's income from sources within Great Britain and the amount of British taxes paid by plaintiff. Such information of course was essential for the preparation of correct United States income tax returns for plaintiff. This situation was fully explained by Judge MacDonald to a representative of the Collector of Internal Revenue at Hartford in 1949.[3]

---

1. The filing of these motions was appropriately suggested by Judge Blumenfeld at a pre-trial conference.

2. Honorable Herbert S. MacDonald, now a Judge of the Superior Court of the State of Connecticut, who practised law in New Haven prior to appointment to the bench.

3. By letter dated June 14, 1949, Judge MacDonald wrote to the office of the Collector of Internal Revenue as follows:

   "Mr. W. E. Cook

   "Income Tax Division

   "Office of the Collector of Internal Revenue

   "460 Capitol Avenue

   "Hartford, Connecticut

   "Re: Mrs. Mary T. Trevelyan

   "Cambridge, England

   "Dear Mr. Cook:

   "I am addressing this letter to you personally as a result of a conference which I had with you at your office last March immediately after I made the first quarterly payment of the estimated 1949 income tax of Mary T. Trevelyan. At that time, after I explained the rather unusual situation at some length, you suggested that I mail the next instalment payment to you with a letter explaining the situation.

   "Mary T. Trevelyan is a United States citizen, formerly Mary T. Bennett of New Haven, Connecticut, who has been married to an English citizen, Charles Humphrey Trevelyan, for twelve years. Although she has resided in England for twelve years, she has retained her United States citizenship and has elected not to renounce it despite the fact that the retention of same subjects her to a higher federal income tax.

   "After a number of years during which I was unable to obtain detailed information concerning Mrs. Trevelyan's income from sources within Great Britain and also the British taxes paid by her, I finally obtained such information and, on July 15th, 1943, filed in the office of the

In 1955 the Bank did submit a statement of British income received and British income tax paid by plaintiff during the period 1944 to April 5, 1952. Thereupon returns were prepared but were not filed because of a suggestion from an IRS representative that it would be preferable to withhold filing such returns until subsequent returns could be prepared and filed.

In 1957 the Bank submitted information with respect to plaintiff's British income received and British taxes paid by plaintiff during the period April 5, 1952 to April 5, 1956. Final returns for the years 1944 through 1956 thereupon were prepared by accountants and were filed December 30, 1957 with the District Director of Internal Revenue at Hartford.

January 2, 1959 claims for refund were filed on behalf of plaintiff for the years 1944 through 1953, seeking for each of these years refund of the differ-ence between the amount of estimated tax paid and the amount of tax shown due on the final return.

January 21, 1959 the District Director by letter advised that the refunds claimed for the years 1944–1953 would not be allowed.[4]

January 15, 1960 the instant action was commenced, pursuant to 28 U.S.C. § 1346(a) (1), to recover the refunds claimed for the years 1944–1953.

February 9, 1960 a registered notice of disallowance of the claims for refund was issued by the District Director.

## QUESTION PRESENTED

The sole question presented, the answer to which is believed to be dispositive of the instant motions, is:

Were plaintiff's claims for refund filed within the limitation provided by Section 322(b) of the Internal Revenue Code of 1939?[5]

Collector at Hartford complete returns, documents pertaining to British income and British income taxes and other detailed information covering the tax years 1937 through 1942 inclusive. On December 14th, 1943, I filed an amended return for the year 1942 and I later filed a return for 1943.

"Since the filing of the returns above mentioned, I have been unable to obtain sufficient data from England, despite repeated requests, to prepare and file accurate tax returns. According to the best estimate that I could make, the tax would have been approximately $1200 per year for the years 1944 through 1948 and I have regularly filed estimates and paid $1200 per year in quarterly instalments. I likewise filed an estimate of $1200 for 1949 and am enclosing at this time the second quarterly instalment on the same in the form of a check to the Collector for $300 to which is attached Form E.S.

"I have sent several urgent requests to Drummonds Branch of the Royal Bank of Scotland who handle Mrs. Trevelyan's affairs in England, requesting the necessary information for the years above mentioned concerning Mrs. Trevelyan's British income and the British taxes paid by her translated into terms of American dollars. Just as soon as I receive this information I will prepare and file the income tax returns for the years 1944 through 1948 and at that time will be glad to confer with one of your agents concerning the many adjustments that probably will have to be made.

"The principal purpose of this letter is to put on record the fact that this taxpayer is aware of her tax liability, that I have in my possession all information concerning her income from sources within the United States and that I wish to cooperate one hundred percent in arriving at a final determination of her tax liability to the United States just as soon as I have in my possession the information necessary for such a determination.

"For my record, I would appreciate your acknowledging receipt of this letter by signing and returning the enclosed copy of the same to me in the enclosed addressed envelope.

"Very truly yours,
"/s/ Herbert S. MacDonald"

4. Cf. Register Publishing Company v. United States, 189 F.Supp. 626 (D.Conn. 1960).

5. Int.Rev.Code of 1939, § 322, 26 U.S.C. § 322 (1952) [now Int.Rev.Code of 1954, § 6511, 26 U.S.C. § 6511 (1958)]:
   "§ 322. *Refunds and credits*
   \*     \*     \*     \*     ❋
   "(b) *Limitation on allowance*
   "(1) *Period of limitation.* Unless a claim for credit or refund is filed by the taxpayer within three years from

The Court holds this question must be answered in the affirmative.[6]

### SECTION 322(b)

The applicable statute of limitations, Section 322(b), provides in subsection (1) that a claim for refund must be presented within three years from the time of the filing of a *return*; and in subsection (2) (A) that a refund shall not exceed the *tax paid* during the three years immediately preceding the filing of the claim.

In holding that plaintiff's claims for refund were filed within the limitation provided by Section 322(b), the Court construes the statute as follows:

(1) The "return" referred to in Section 322(b) is the final return, not the declaration of estimated tax.

(2) The "tax paid" referred to in Section 322(b) is the determination of plaintiff's tax liability by filing the final return, not the payment of installments of estimated tax.

Absent any decision squarely in point by the Supreme Court or the Second Circuit, this Court looks to other circuits for decisions which, while not controlling on this Court, are persuasive and will be followed.

In Schmidt v. Commissioner, 272 F.2d 423 (9 Cir. 1959), a declaration of estimated tax for 1944 was filed showing estimated income tax liability of $2,473 which was paid in four equal installments within the time required by law. No declaration of estimated tax for 1945

was filed. The final 1944 return was not filed until June 30, 1952; it showed no tax due; but it claimed, as a credit against the 1945 estimated tax, the $2,473 overpayment for 1944. The final 1945 return, also filed June 30, 1952, showed a 1945 tax liability of $3,469.44; this was reduced by the $2,473 overpayment for 1944; and the balance was paid with the return. The government refused to allow the claimed $2,473 refund for 1944 in the form of a credit against the 1945 tax liability on the ground that the claimed refund was not timely, not having been claimed within three years of the $2,473 payment. Rejecting the government's contention and deciding the case in favor of the taxpayer, the Court of Appeals for the Ninth Circuit said (Id. at 428–429):

"The principal argument made by counsel for the respondent in this court was that the allowance of the credit claimed was prohibited by the limitations set forth in § 322(b) (2) (A) of the 1939 Code which provides that the amount of a claimed credit or refund 'shall not exceed the portion of the tax paid * * * during the three years immediately preceding the filing of the claim.'

"Counsel's argument that the statute of limitations had run proceeds on the assumption that 'payment' of the 1944 tax occurred when petitioner sent the money in with the return of the estimated tax. That assumption is erroneous. The remittances made in 1944 did not constitute payment of the tax at that time for the

---

the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *

"(2) *Limit on amount of credit or refund.* The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years im-

mediately preceding the filing of the claim.

"(B) If a claim was filed, and (i) no return was filed, or (ii) if the claim was not filed within three years from the time the return was filed by the taxpayer, during the two years immediately preceding the filing of the claim."

6. The parties have stipulated that if plaintiff's claims for refund are sustained, interest runs only from the date of the final return.

purpose of starting the running of the statute of limitations. * * *

* * * * *

"The statute of limitations did not begin to run against allowance of the claimed credit until the date of filing of the 1944 return on June 30, 1952; only then was the final tax liability for 1944 ascertainable. We hold that the claim for credit presented here was not barred by limitations."

In Plankinton v. United States, 267 F.2d 278 (7 Cir. 1959), declarations of estimated tax for 1949 and 1950 were filed; quarterly payments of the estimated tax were remitted as required by law; but the final returns, accompanied by final payments, for 1949 and 1950 were not filed until June 1950 and September 1951, respectively. Claims for refund were filed; that for 1949 was filed in May 1953; that for 1950 was filed in July 1954. These claims for refund were filed within three years of filing of the final returns and the accompanying final payments, but more than three years after filing of the declarations of estimated tax and remittance of the quarterly payments of estimated tax. The government allowed for each year that part of the claimed refund which accompanied the final return, but refused to allow that part of the claimed refund which represented payments of the estimated tax. The government's refusal to allow the latter was based on Section 322(b) (2) (A) and Section 322 (e) of the Internal Revenue Code of 1939. The Court of Appeals for the Seventh Circuit first stated the issue (Id. at 279–280):

"The sole issue for determination is whether the provisions of the Internal Revenue Code of 1939, as amended, preclude a refund or recovery of amounts in excess of the payment remitted with the final return for each year, the remaining portion of the overpayment in each instance having been remitted as estimated tax more than three years before the filing of the respective claims for refund.

"The quarterly remittances for each of the years in question were made pursuant to the requirements of Section 59 of the Internal Revenue Code which was added by the Current Tax Payment Act of 1943 (26 U.S.C.A. § 59). * * *"

Then, rejecting the government's contention and deciding the case in favor of the taxpayer, the Court held (Id. at 280):

"Congress in the enactment of Section 59(d) of the Current Tax Payment Act specifically characterized remittances of estimated tax as payments 'on account' of the tax for the taxable year i. e. a remittance on a liability not as yet finally defined or determined. Nothing in the language employed in Section 59(d) or the context in which it is found is indicative of any intention on the part of Congress to make such remittances 'tax paid' for the purpose of measuring a limitation on refunds. * * *"

The following cases support plaintiff's position in the instant case, particularly that remittances made prior to the time a taxpayer's liability is defined do not constitute "payment" of a tax for purpose of commencing the limitation period on refund claims. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945); Budd Co. v. United States, 252 F.2d 456, 459–460 (3 Cir. 1957); United States v. Dubuque Packing Co., 233 F.2d 453, 459–462 (8 Cir. 1956); Lewyt Corp. v. Commissioner, 215 F.2d 518, 522–523 (2 Cir. 1954), affirmed in part and reversed in part on other grounds, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955); Thomas v. Mercantile Nat. Bank, 204 F.2d 943, 944 (5 Cir. 1953); Roles v. Earle, 195 F.2d 346, 349 (9 Cir. 1952); Atlantic Mutual Insurance Co. v. McMahon, 153 F.Supp. 48 (S.D.N.Y. 1957).

## SECTION 322(e)

Defendant vigorously urges that Section 322(e) of the Internal Revenue Code

of 1939 [7] was intended to establish a definite date on which payment of tax for purposes of Section 322(b) (2) (A) [8] shall be deemed to have occurred; that the payment of the estimated taxes in the instant case started the running of the statute of limitations; and that plaintiff is barred from recovering such taxes, since they were paid more than three years before the claims for refund were filed.

Defendant's contention in this respect was categorically rejected by the Court of Appeals for the Seventh Circuit in Plankinton v. United States, supra at 280–281: [9]

> "The Government concedes that generally remittances made prior to the time the taxpayer's liability is defined do not constitute 'payment' of a tax for the purpose of commencing the limitation period on refund claims. The Government contends, however, that the rule established by these decisions has no application because Congress by the provisions of Section 322(e) of the Code has provided otherwise in the case of estimated tax remittances made in conformity with the requirements of Section 59. It regards Section 322 (e) as establishing March 15 of each year as the date of 'payment' insofar as amounts remitted as estimated tax for the preceding calendar tax year are concerned.
>
> "The taxpayer relies on the general rule established by the cases to which reference has been made as sustaining the judgment of the District Court and contends that Section 322(e) does not have the effect of specifying a particular date on which remittances on account of estimated

tax become 'tax paid' within the meaning of Section 322(b) (2) (A).

> " * * * The words of the statute are plain. They do not purport to establish a specific and conclusive date on which payment of tax for the purposes of Section 322(b) (2) (A) shall be deemed to have occurred. Such a construction would not be in accord with the natural import of the words used nor does it appear necessary to carry out the plan or objective of the Congress in making the provisions for refund.
>
> "We believe that if recourse to legislative history is at all proper or necessary the phrase 'not earlier than' as used in Section 322(e) was not intended to fix a definite or specific date. Section 322(e) was originally added to the Code in 1942. Its subject matter then related solely to taxes withheld. * * *
>
> "When the Current Tax Payment Act of 1943 was enacted the word 'on', originally in the statute, was deliberately changed by Congress to the phrase 'not earlier than' and the same phraseology was inserted in connection with remittances of estimated tax. This deliberate selection of language so different from that used in the earlier act indicates that a change of law was intended. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 157. * * * "

At the time of the oral argument in the instant case, counsel for defendant with commendable candor conceded that plaintiff's motion for summary judgment should be granted if this Court were persuaded by the Plankinton and Schmidt cases; but counsel for defendant urged

---

7. Int.Rev.Code of 1939, § 322(e), 26 U.S.C. § 322(e) (1952) [now Int.Rev. Code of 1954, § 6513(b), 26 U.S.C. § 6513(b) (1958)]:

> "§ 322. *Refunds and credits*
> * * * * *
> "(e) *Presumption as to date of payment.* * * * For the purposes of this section, any amount paid as estimated

tax for any taxable year shall be deemed to have been paid not earlier than the fifteenth day of the third month following the close of such taxable year."

8. Supra note 5.

9. Affirming 164 F.Supp. 912, 918 (E.D. Wis.1958).

that these two cases were incorrectly decided.

Since the argument in the instant case, the Court of Appeals for the Tenth Circuit has decided United States v. Miller, 315 F.2d 354 (10 Cir.1963). While that case is factually distinguishable from the instant case, the court there nevertheless did construe Section 322(e) of the Internal Revenue Code of 1939 and concluded (Id. at 357):

> "In its consideration of the Current Tax Payment Act of 1943, Congress recognized the desirability of fixing a definite date on which estimated tax payments would be deemed paid for purposes of the refund limitations of § 322. Congress considered that the establishment of such a date was 'in the interest of certainty and administrative feasibility'."

The court went on in the Miller case to hold (Id. at 358–359):

> "We have a case of mistake. The taxpayers believed that they had an *obligation to pay estimated income taxes*. The notations on the checks show this. The returns, subsequently filed and not now questioned by the government, revealed the mistake. The issue is narrowed to whether the limitation on refunds imposed by § 322(b) (2) (A) applies to overpayments made by way of mistake. We think that it does."

The instant case is hardly one of mistake. It is the case of a scrupulously conscientious attorney who, precisely for the purpose of avoiding any mistake in the status of his client's income tax liability to the United States, took the pains ten years before the claims for refund were filed, to write to a representative of the Connecticut Collector of Internal Revenue to confirm their conference a few months earlier, at which time the taxpayer's attorney "explained the rather unusual situation at some length", i. e. his difficulties in obtaining information from Great Britain necessary to prepare the taxpayer's United States income tax returns. The attorney, after mentioning previous difficulties he had had with this taxpayer's returns during an earlier period (1937–1943) for the same reasons, explained that "according to the best estimate that I could make" the taxpayer's tax would be approximately $1200 per year; that he had filed declarations of estimated tax in that amount for the years 1944–1949; that he had paid quarterly installments accordingly; and that he would continue to do so.

Then in 1955 when information from Great Britain first became available with which to prepare taxpayer's returns, her attorney had them prepared promptly. They were not filed *because of a suggestion from an IRS representative that it would be preferable to withhold filing such returns until subsequent returns could be prepared and filed.*

These are among the undisputed facts in this case—facts which add up, not to mistake, but to painstaking efforts on the part of taxpayer's attorney to avoid any mistake with respect to his client's United States income tax liability.

If there is a conflict between the decision of the Tenth Circuit in Miller, on the one hand, and the decisions of the Ninth Circuit in Schmidt and the Seventh Circuit in Plankinton, on the other hand, such conflict presumably will be resolved in due course by the Supreme Court. Until a decision by the Supreme Court or the Second Circuit comes down, this Court will continue to follow the Schmidt and Plankinton decisions. In doing so, this Court yields to no one in its esteem for the distinguished panel in the Miller case.

Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.