## BUSSER v. UNITED STATES.
### No. 8006.

Circuit Court of Appeals, Third Circuit.

Argued July 16, 1942.

Decided Aug. 28, 1942.

Rehearing Denied Sept. 21, 1942.

Richard S. Salant, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Charles Myers, of Philadelphia, Pa. (Kenneth W. Gemmill and Barnes, Dechert, Price & Smith, all of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, Circuit Judge, and SMITH and LEAHY, District Judges.

GOODRICH, Circuit Judge.

The question involved in this appeal is the liability of the United States for interest on the refunded amount of an alleged overpayment of an estate tax. The facts are simple; it is the legal conclusion from them which is the subject of controversy. The decedent, a resident of Germany, died June 2, 1937. The federal estate tax return was due on September 2, 1938; likewise the tax.[1] Philip Price, substituted trustee under deed of trust from the decedent, received on August 30, 1938, a letter from the Collector, enclosing form for federal estate tax return. On the same day, he requested a 30 day extension of time to file a return; the Collector granted the request August 31, 1938. On August 31, 1938, Mr. Price sent to the Collector[2] a check for $6,800, his letter requesting that he "apply this on account of the tax in the above estate ultimately shown to be due by the Estate Tax Return when filed." October 3, 1938, the plaintiff filed the estate tax return with the Collector, showing a tax liability of $5,000.49, for which a receipt was sent by the Collector on October 6. The plaintiff filed a claim for refund of $1799.51 October 3, 1940,[3] this being the amount by which the check sent on August 31, 1938, exceeded the tax liability. The Collector sent a receipt covering this amount on November 2, 1940; a check for $1799.51 dated on or about February 24, 1941, was received by the taxpayer on March 25, 1941. The taxpayer brought suit in April, 1941, to recover interest upon $1799.51 at 6% from September 1, 1938 until the date of payment. The court below gave judgment for the plaintiff, and this appeal followed.

The question turns upon the application of an appropriate statute for the sovereign is not liable for interest unless there is a statutory requirement or a contract to pay it. Tillson v. United States, 1879, 100 U.S. 43, 25 L.Ed. 543; United States v. North Carolina, 1890, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336. The applicable statute provides that "Interest shall be * * * paid upon any overpayment in respect of any internal-revenue tax, at the rate of 6 per centum per annum, * * *."[4] The key word in the sentence is obviously "overpayment". Under the circumstances here stated, did the taxpayer make an overpayment of the estate tax of his decedent? There is an almost irresistible tendency to drift into mere logomachy in discussing such a question and the parties have not escaped it here. Counsel for the government avoids the use of the term payment as though it were taboo; and speaks of the remittance as a "deposit".[5] The taxpayer, in turn, reproduces portions of the correspondence between his lawyer and the Collector's office, italicizing the use of such terms as paid, payment and overpayment. "These are but wild and whirling words, my lord." There is no reason to think that the business of payment and refund was discussed by the parties with an eye on the section of the statute relating to interest and even if they had, their use would not settle the problem of statutory construction for the Court. Before that question

---

[1] § 203(a), Revenue Act of 1935, 26 U. S.C.A. Int.Rev.Acts (1940) p. 806; Treas. Reg. 80 (1937 ed.) Art. 70.

[2] Most of the assets of the decedent were in the trustee's hands and Ralph C. Busser, Jr., the appellee herein, did not have in his possession sufficient assets to cover the estimated taxes.

[3] The stipulation of the parties states that on October 8, 1938, the Collector orally advised the plaintiff's attorney that if the audit of his return showed any overpayment, such overpayment would be refunded without filing a claim for refund.

[4] § 614(a), Revenue Act of 1928, 26 U. S.C.A. Int.Rev.Acts (1940) p. 463.

[5] Taxpayer's counsel points out that "deposit" is used 14 times on 10 pages of the government's brief.

is reached, there is a preliminary point urged by the taxpayer which should be disposed of. He argues that the special finding of fact by the trial judge disposes of the case under the well settled rule that such findings are to be accepted on appeal unless clearly erroneous.[6] The finding is to the effect that Philip Price, on behalf of the plaintiff made an overpayment of $1,799.51 to the Collector of Internal Revenue in respect to the estate ⬛ on the estate of the decedent whose ⬛rs are here involved. If the taxpayer is correct in his position there is no question in this case, for the "overpayment" entitled him, under the statute, to a refund. But we are not impressed with the argument. The finding of fact is accepted as fact. Mr. Price did put in the hands of the Collector more money than the tax upon the estate turned out to be. But the legal conclusion that this was an "overpayment" within the meaning of the statute providing for interest is a question of law, not fact, and the very question this Court must decide.

⬛ Our conclusion upon that point is adverse to the taxpayer. The common use of the term payment, found in both laymen's language as given in the dictionary and lawyers' language as used in judicial opinions [7] explains it as something given to discharge a debt or obligation. At the time the check was sent here, there was nothing due. Time for tax settlement had been extended; the remittance, while an entirely proper thing to make, and a safeguard against interest charges against the taxpayer, was entirely voluntary. The government was not demanding more than was due from a taxpayer; he was offering ahead of the due date an amount based entirely on his own estimate.[8] Until the taxpayer's return is filed and checked, the taxing authorities can have no idea whether a sum remitted to them in advance is less than, close to, or many times larger than the tax ultimately found to be due.[9] This fact itself has practical consequences relevant in the determination of the effect of language imposing an obligation upon the government. In this case there is not the slightest question concerning the good faith of the taxpayer or his counsel. But if voluntary remittances to the Collector can be made interest bearing, an inviting opportunity is offered to deposit money with the government at attractive rates considerably higher than can be secured elsewhere.

The point, while narrow, is not without difficulty. Authority is scant for the position of either side.[10] Our conclusion is that the fair meaning of the interest statute does not bring this taxpayer's case within it.

The judgment of the District Court is reversed.

---

[6] Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[7] See "Payment", 31 Words and Phrases, Perm.Ed., 1940, p. 474 et seq.

[8] Cf. Chicago Title & Trust Co. v. United States, D.C.N.D.Ill.1941, 45 F.Supp. 323 distinguishing that case from one like the present.

[9] This was noted by the Court in Moses v. United States, D.C.S.D.N.Y.1939, 28 F.Supp. 817, a decision adverse to the taxpayer.

[10] For the taxpayer is Atlantic Oil Producing Co. v. United States, Ct.Cl. 1940, 35 F.Supp. 766. Against him is Moses v. United States, supra. Other decisions cited to us have been read, but not found helpful.