256 F.2d 223
 58-2 USTC P 9610
 Gretchen Pack ROSE, As Executrix of the Estate of John W.
Hubbard, Deceased, Appellant in No. 12399,
v.
UNITED STATES of America.
Gretchen Pack ROSE, As Executrix of the Estate of John W.
Hubbard, Deceased,
v.
UNITED STATES of America, Appellant in No. 12400.
 Nos. 12399, 12400.
 United States Court of Appeals Third Circuit.
 Argued March 20, 1958.
Decided June 16, 1958.
 
 Karl Schmeidler, Washington, D.C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D.C., D. Malcolm Anderson, U.S. Atty., Thomas J. Shannon, Asst. U.S. Atty., Pittsburgh, Pa., on the brief), for appellant in 12400.
 Lee W. Eckels, Pittsburgh, Pa. (William W. Scott, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellant in 12399.
 Before KALODNER, STALEY and HASTIE, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 The problem raised by these appeals is that of determining the taxable year or years in which interest may be deducted for federal income tax purposes, where the books of the taxpayer are maintained on the accrual basis and the obligation with respect to which the interest is payable is contested.
 
 
 2
 The facts are not in dispute.
 
 
 3
 The taxpayer is the executrix of the estate of John W. Hubbard, deceased. She instituted an action for refund of federal income taxes paid by the estate for the taxable years ending on May 31, in 1949, 1950 and 1951. The claim was based upon the right to deductions in those years for interest alleged to have accrued with respect to a deficiency in the federal estate tax.
 
 
 4
 Taxpayer's decedent died on June 3, 1947. The books of the estate were kept on the accrual method of accounting. On September 2, 1948, a federal estate tax return was filed and the tax shown to be due thereon was paid. Following a request of September 17, 1948, for early determination of the estate tax liability, an internal revenue agent, on or about May 15, 1949, commenced his examination. On July 21, 1950, a 30-day letter and a copy of the examining agent's report were mailed to taxpayer proposing an estate tax deficiency slightly in excess of $2,300,000. On August 4, 1950, a check in the amount of $1,500,000 was delivered by taxpayer to the Collector of Internal Revenue for deposit in his suspense account in respect of the asserted deficiency. Accompanying this check was a letter which read, in part, as follows:
 
 
 5
 'The undersigned, executrices of the above estate, enclose herewith our check for $1,500,000 payable to your order. Please deposit the proceeds of this check in your 9-D account. This payment is made in respect of the proposed deficiency in the estate tax of the above decedent which exceeds $2,900,000 exclusive of credit for state, inheritance and estate taxes.
 
 
 6
 'Neither this letter nor the payment made herewith shall be construed as a consent on behalf of the above estate to the assessment of the proposed deficiency.
 
 
 7
 'Will you please stamp the enclosed carbon copy of this letter and return it to us together with your receipt for this payment.'
 
 
 8
 On August 28, 1950, a protest was filed with the Internal Revenue Agent in Charge wherein exception was taken to some of the adjustments and the deficiency proposed by the examining agent.
 
 
 9
 In the absence of an agreement with the Internal Revenue Agent in Charge as to the estate's federal estate tax liability, the case was transferred to the Technical Staff. On July 9, 1951, an offer was made on behalf of the Estate to settle the asserted federal tax liability on the basis of a deficiency of $1,524,485.60, less a credit of $29,445.62 for Canadian Succession Tax when proved, or a net deficiency of $1,495,039.98. On July 18, 1951, the foregoing offer was accepted on behalf of the Commissioner of Internal Revenue. On August 24, 1951, the Collector assessed the agreed deficiency together with interest, in the amount of $172,175.36, and credited the deposit made on August 4, 1950.[1] The balance shown to be due was paid on September 6, 1951.
 
 
 10
 In computing net income in the estate's fiduciary income tax returns for the taxable years ending on May 31, in 1949, 1950 and 1951, no deduction was asserted on account of accrued interest with respect to any deficiency in the federal estate tax. There is no dispute that interest on such obligation is deductible. However, in the action below, taxpayer asserted that the interest on the estate tax deficiency accrued ratably throughout the three taxable years, or, in the alternative, that it accrued entirely in the taxable year ending May 31, 1951, because of the $1,500,000 remittance for deposit in the Collector of Internal Revenue's 'suspense account' on August 4, 1950.
 
 
 11
 The District Court[2] ruled against taxpayer's contention that the interest accrued ratably in the three taxable years involved, but it allowed a refund for the taxable year ending May 31, 1951, holding that the entire amount of interest was deductible in that year since the remittance of August 4, 1950, constituted a payment.
 
 
 12
 Both the taxpayer and the United States appealed, the former at our appeal No. 12,399 and the latter at our appeal No. 12,400.
 
 
 13
 On her appeal taxpayer contends again that the interest on the estate tax deficiency accrued ratably in the three tax years involved because the federal estate tax liability was fixed at the moment of the decedent's death, even though the amount was not finally determined until much later. The United States on its appeal, contends that the remittance of August 4, 1950, did not constitute a payment; that it was merely a deposit to stop the running of interest; the liability to pay the additional tax was not satisfied or paid by the interim arrangement, and therefore the estate tax liability did not become fixed before the estate's fiscal year 1952, when the contest was settled and the additional estate tax became due and definite in amount.
 
 
 14
 We are of the opinion that the District Court correctly held that the interest on the estate tax deficiency could not be accrued and deducted ratably over the three taxable years involved. Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 420; also, Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 284, 64 S.Ct. 596, 88 L.Ed. 725; United States v. Anderson, 1926, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347. As these cases indicate, a taxpayer on the accrual basis may not accrue an expense the amount of which is unsettled or the liability for which is contingent. Such expense may be accrued, and deducted, only in the taxable year in which all events occur to establish the existence of a definite liability and fix the amount thereof. We are not presented here with a situation in which neither the fact nor the amount of liability is contested. Cf. Harrold v. Commissioner, 4 Cir., 1951, 192 F.2d 1002, 1006. While taxpayer says that it was never disputed that the estate was liable for the federal estate tax, she did contest the liability of the estate to any amount proposed as a deficiency in excess of the amount shown due on, and paid with, the original estate tax return. In these circumstances, the liability was contingent, not fixed. Consequently, the interest with respect thereto could not be accrued and deducted as an expense item over the three taxable years involved.
 
 
 15
 The United States concedes, nevertheless, that deduction is not precluded prior to the resolution of the contest if the contested tax has actually been paid. In such circumstances, the interest becomes deductible not later than the time of payment even though the contest as to liability continues. It was upon this basis that the District Court, having held that the remittance made on August 4, 1950, constituted payment, granted to the taxpayer a refund for the taxable year ending May 31, 1951. The United States, as stated, disagrees with the District Court's determination that the remittance constituted payment of the tax.
 
 
 16
 On this score, we are of the opinion that the District Court erred. Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535; Budd Co. v. United States, 3 Cir., 1957, 252 F.2d 456, 459; United States v. Dubuque Packing Co., 8 Cir., 1956, 233 F.2d 453, 460; Lewyt Corp. v. Commissioner, 2 Cir., 1954, 215 F.2d 518, 521-523, modified on other grounds 1955, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029; Busser v. United States, 3 Cir., 1942, 130 F.2d 537.
 
 
 17
 As stated in Lewyt Corp. v. Commissioner, supra, 215 F.2d at page 522:
 
 
 18
 'A remittance made in respect of an asserted or putative tax liability in no proper sense constitutes a tax 'payment' except to the extent that it is effective to discharge such liability in whole or in part. That in turn depends upon the agreement of the taxpayer and the Commissioner or his representatives, acting within their powers, or upon whether the taxing authorities have a duty under the particular circumstances involved to accept the remittance as a payment of the tax in full or pro tanto.'
 
 
 19
 Here, we think it clear on the record that the taxpayer did not discharge, by the remittance in 1950, what she deemed to be a liability, nor pay one that was asserted. The remittance was expressly restricted as a deposit in the Collector's suspense account, and was employed as a means of saving interest or penalties under the system recognized by the Commissioner. At the time the check for $1,500,000 was delivered, it was made clear on behalf of the estate that this was not a sum in whole or in part to be treated as satisfaction of a tax obligation. Further, the parties have stipulated that if a request were made for return of the remittance prior to assessment, the Collector was required to initiate action to make such return. The fact that jeopardy assessment procedure could be utilized to retain the fund is not a material consideration, since the making of the remittance is not pertinent to jeopardy assessment, and only upon such jeopardy assessment would the deposit be applied against the assessed tax. Nor, as it was pointed out in Lewyt Corp. v. Commissioner, supra, was the Collector under any duty to regard the remittance as a payment, and in fact he did not do so here. The remittance did not become a payment until the contest between the parties was settled and the deficiency agreed upon. This did not occur until July of 1951, and the interest accordingly became deductible in the taxpayer's fiscal year ending May 31, 1952.
 
 
 20
 The decisions in Bendheim v. Commissioner, 2 Cir., 1954, 214 F.2d 26, and McConkey v. Commissioner, 4 Cir., 1952, 199 F.2d 892, certiorari denied 1953, 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1355, relied upon by the taxpayer here, are not apposite. The issue in both cases concerned the jurisdiction of the Tax Court, which, as those cases show, existed only if there was an unpaid deficiency. In both cases, the taxpayers designated the remittances as payments, but, in any event, by the time the cases reached the Tax Court it was clear that there were no unpaid deficiencies. Indeed, a like result would be reached here, if the remittance of August 4, 1950, had equalled or exceeded the agreed deficiency, and the taxpayer subsequently sought relief in the Tax Court.
 
 
 21
 For the reasons stated, the judgment of the District Court, insofar as it dismissed taxpayer's first alternative claim for recovery of income taxes for the fiscal years ended May 31, 1949, May 31, 1950 and May 31, 1951 (Appeal No. 12,399) will be affirmed, and insofar as it sustained taxpayer's second alternative claim for recovery of income taxes for the fiscal year ended May 31, 1951 (Appeal No. 12,400) will be reversed, and the cause remanded with directions to the District Court to proceed in accordance with this opinion.
 
 
 
 [1]
 The statement issued by the Collector on August 28, 1951, showed the following computation
 
 
 [2]
 D.C.W.D.Pa.1957, 151 F.Supp. 514