FRED J. ARHEIT AND GERTRUDE E. ARHEIT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63289. Filed October 10, 1958.

*Arnold F. Bunge, Esq.*, and *A. J. Beran, C. P. A.*, for the petitioners.

*Maurice B. Townsend, Jr., Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The question is whether petitioner's remittance to the collector on April 7, 1952, of interest on proposed tax deficiencies, prior to the assessment of taxes and interest, constituted payment of interest for the purpose of a deduction under section 23 (b), 1939 Code.[1] The amount tendered in advance of assessment was deposited to a suspense account.

The respondent's position is that the remittance prior to assessments

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness * * *

of the deficiencies and interest did not constitute payment of taxes and interest, but was a mere deposit pending the determination and defining of petitioner's liability for additional taxes for the years 1945–1950, inclusive. He contends that both the existence and the amount of petitioner's liability was in dispute in 1952 and thereafter until settlement in 1955,[2] so that in 1952 there was no indebtedness for taxes and interest, nor payment in discharge of indebtedness. Respondent contends, further, that his position is consistent with the principles stated in *Rosenman* v. *United States*, 323 U. S. 658; and *Lewyt Corp.* v. *Commissioner*, 215 F. 2d 518, modified on another point 349 U. S. 237.

The petitioner argues that since he reports income on a cash basis he is entitled to a deduction for 1952 of interest "paid," and that he should not be deprived of the deduction in computing his net income for 1952 merely because the respondent "refused" to make formal assessments of additional taxes in 1952. He relies on dictum in *Chestnut Securities Co.* v. *United States*, 62 F. Supp. 574, 576.

The narrow question here is whether any indebtedness existed in income tax or interest on April 7, 1952, when the collector received the petitioner's check for $66,639.70, so that the money could constitute an actual payment of tax and interest and a portion be deductible as interest paid on indebtedness under section 23 (b).

It is now well established that a remittance which is credited to a collector's suspense account does not constitute a payment of tax. *Rosenman* v. *United States*, *supra*; *Lewyt Corp.* v. *Commissioner*, *supra*; *Rose* v. *United States*, 256 F. 2d 223, reversing 151 F. Supp. 514; *Budd Co.* v. *United States*, 252 F. 2d 456; *United States* v. *Dubuque Packing Co.*, 233 F. 2d 453, 460; *Busser* v. *United States*, 130 F. 2d 537. A collector's suspense account, as the parties have agreed, is a separate internal bookkeeping account maintained for the purpose of recording identified remittances received with respect to additional taxes or interest which have been proposed or recommended for assessment *but have not been assessed*. "Money held in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Rosenman* v. *United States*, *supra*. Interest does not accrue and is not owing by the Government on the amount deposited to a suspense account which proves to be in excess of the amount of the tax eventually assessed. *Busser* v. *United States*, *supra*. For the same reasons which underlie the above, if the amount of the tax and interest which eventually is assessed is less than the total sum which was deposited to a suspense account, the excess will be refunded to the taxpayer by the collector

---

[2] Respondent's counsel stated at the trial that the Commissioner's position contemplates allowance of the claimed deduction for 1955.

on the basis of a credit memorandum issued by the collector to a disbursing agent, without the taxpayer's filing a claim for refund. With respect to this matter, the parties, by their stipulation, are in agreement.

In 1952, there had not been any formal determination by the Commissioner of liability of the petitioner for additional taxes for any of the years 1945–1950, inclusive, and no tax deficiencies had been assessed. Although agents of the Commissioner had completed reports in which they recommended determinations of tax deficiencies in stated amounts, plus 50 per cent additions thereto for fraud, the Commissioner had not concluded that such proposals could be adopted. One of the reasons for his not making definite and formal determinations of deficiencies for the years in question was that charges against petitioner of fraudulent tax evasion,[3] with respect to which criminal prosecution might be recommended, were pending and awaiting presentation to a grand jury. It is clear that the Commissioner, by not making any definitive determination in 1952 of liability for additional taxes, left open his procedures for revising the then-proposed deficiencies, upward or downward, in the light of any new evidence and facts which might be discovered during a grand jury hearing or a subsequent trial of the charges, if any.

In this situation, when petitioner was informally advised by agents at a conference on February 26, 1952, that they had recommended in their reports the formal determination of tax deficiencies in stated amounts for each of the years involved, petitioner used the information which he obtained from the agents, with which he was then confronted, to make his own estimates of the amounts of tax deficiencies, without, however, 50 per cent additions for fraud. Thus, on brief, petitioner concedes that he proceeded to make his own computation of tax deficiencies. Having done that, petitioner voluntarily tendered to the collector an amount covering his estimates of deficiencies, plus interest thereon to the date of the tender of the amount thereof, having requested the collector's office to compute for him the amounts of interest on the amounts of the estimated deficiencies. But petitioner did not enter into any agreement with the Commissioner establishing his liability for any additional taxes. He could not obtain an agreement in 1952 from the Commissioner about his liability for additional taxes because, among other reasons, the petitioner would not agree to a liability for the entire amount of the deficiencies then proposed informally, or for 50 per cent additions for fraud to the agents' proposed deficiencies. If there had been any such agreement the collector, of course, could have accepted petitioner's remittance

---

[3] See 9 Mertens, Law of Federal Income Taxation par. 49.111.

in 1952 as an amount "collected without assessment," section 271 (a) (1) (B), but he did not.

The petitioner argues that he "admitted" that he owed deficiencies in the amounts set forth in the letter of his attorney dated April 7, 1952, which has been set forth in the findings of fact. But granting that the use of the word "tender," in the letter of April 7, 1952, might be construed to mean that he offered to accept liability for additional taxes in the amount of $53,685.80, such offer was not accepted in 1952 by the Commissioner, and upon the facts before us we cannot make a finding that in 1952 petitioner formally *acquiesced* in any proposed deficiencies. See *Lewyt Corp.* v. *Commissioner*, *supra*, pp. 522, 523. For the purpose of the issue before us, it cannot be said that a mere offer on the part of a taxpayer establishes a liability for tax which is at once discharged by the check which accompanies the offer. Furthermore, it was stated in the letter which accompanied petitioner's check that he made the tender of $53,685.80 "in order to save interest on the proposed deficiencies." His use of the expression "applied," with respect to the handling of the total sum of $66,639.70 which was tendered, is of no more consequence here than it was in *Busser* v. *United States*, *supra*. And, likewise, the fact that petitioner did not make the remittance on April 7, 1952, under "protest" is no more significant here than it was in *Budd Co.* v. *United States*, *supra*.

We must reject petitioner's contention that in 1952 there was definitely established a liability on his part for additional taxes in the total amount of $53,685.80, which constituted an "indebtedness" within the meaning of section 23 (b), or that such liability was established in 1952 because petitioner made a tender of $53,685.80 which was deposited in the collector's suspense account. No liability for additional taxes was definitively established until 1955 when the Commissioner, on April 29, 1955, issued his 30-day letter to petitioner; and there was no indebtedness owing by petitioner for additional taxes until 1955. We think it is clear from the record here that the petitioner did not discharge, by the remittance in 1952, what he deemed to be an indebtedness, nor pay one that existed. Furthermore, it appears to be agreed by the parties in their stipulation relating to the collector's suspense account, that if petitioner had made a request for a return of the remittance prior to assessment, the collector would be required to initiate action to make such return. The fact that jeopardy assessment procedure could be utilized to retain the fund is not a material consideration. *Rose* v. *United States*, *supra*.

Petitioner's argument here, in our opinion, boils down to a contention that the collector was under a duty, under the circumstances, to accept the remittance as payment in 1952 of an indebtedness and of

interest due on an indebtedness. But, admittedly, there was no agreement in this respect between the petitioner and the Commissioner in 1952, and, as was pointed out in *Lewyt Corp.* v. *Commissioner, supra,* the collector was not under any duty to regard the remittance as payment either of taxes or interest. In 1952, petitioner's tax liability for each of the years 1945–1950, inclusive, was still in dispute when the remittance was made, it having been proposed by the agents that deficiencies in the total amount of about $82,960, including 50 per cent additions for fraud, should be determined, and petitioner disclaimed any liability for around $28,462 of such proposed amount. Formal notices of proposed deficiencies were not sent to petitioner until 1955, and there was no settlement, in whole or in part, of petitioner's liability for additional taxes which established indebtedness owing by petitioner until 1955. In these circumstances, we think that the collector's action in placing the 1952 remittance in his suspense account to await the disposition of the dispute then existing between the petitioner and the respondent was proper. *Rosenman* v. *United States, supra,* supports this view. The Supreme Court under the facts of that case held that no "payment" occurred until there had been an assessment followed by its satisfaction in whole or in part out of funds already deposited with the collector. We must reach the same conclusion here.

The question in this case arises under section 23 (b), and in order to allow the claimed deduction for 1952 for interest "paid" the requirements of that section must be met. Our conclusion, upon the facts before us, is that in 1952 an "indebtedness" of the petitioner for additional taxes of $53,685.80 had not been definitively established, and interest on that amount was not "paid" in 1952. In the *Rosenman* case, the Supreme Court rejected an argument (which there was made by the Government) that because a remittance which is credited to a suspense account stops the running of penalties and interest it is therefore to be treated as a "payment" by the parties. Such, in effect, is petitioner's argument here, and it is rejected for the same reasons as were stated in the *Rosenman* case.

Upon all of the facts here we are unable to conclude that petitioner's 1952 remittance *satisfied* an asserted tax liability. We agree with the statement in *Lewyt Corp.* v. *Commissioner, supra,* at 522–523, as follows:

While we do not read Rosenman to foreclose treating as a tax payment any remittance made prior to assessment, we do think that it supports the view that a remittance which does not *satisfy* an asserted tax liability should not be treated as the "payment" of a tax. Satisfaction may, as in Rosenman, follow from payment of a tax assessed, for such a payment extinguishes the asserted liability, even though the taxpayer is left with an independent claim for refund which survives the discharge of the assessment.

Petitioner's reliance upon dictum in *Chestnut Securities Co.* v. *United States*, *supra*, is misplaced. It is noted that the taxpayer there reported income on an accrual basis, and, in addition, that the court, in the dictum found on page 576, had reference to a situation (as shown by the facts) where there were both a determination of a liability for tax deficiencies by a tax authority and an actual payment thereof by the taxpayer. We do not have such situation here. Petitioner's reliance upon the District Court's decision in *Rose* v. *United States*, 151 F. Supp. 514, is not helpful to his cause. We agree with the views of the Court of Appeals for the Third Circuit in *Rose* v. *United States*, *supra*, reversing the lower court.

It is held that a deduction for 1952 of $12,953.90, as interest paid, is not allowable under section 23 (b). Under this issue the respondent is sustained.

The parties are now agreed that for 1951 there is no deficiency in addition to tax under section 294 (d) (2). With respect to the taxable year 1952, decision must be for the respondent.

*Decision will be entered for the respondent.*