*JACOB J. SHUBERT, TRANSFEREE, AND E. F. G. CORPORATION, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 91443, 91444. Filed November 21, 1963.

*Gerald Schoenfeld* and *William W. Schneck*, for the petitioners.
*Bernard Goldstein*, for the respondent.

---

*Caption changed by Court order Jan. 30, 1964, to Estate of Jacob J. Shubert, Deceased, Muriel K. Shubert, Kerttu H. Shubert, and Morgan Guaranty Trust Co., Executors, Transferees, and E. F. G. Corp.

OPINION

The question is whether the corporation's remittance of $20,000 to the district director on December 30, 1955, designated "interest on 1948 income tax," prior to the assessment of taxes and interest, constituted payment of interest for the purpose of a deduction under section 163(a), 1954 Code. The amount tendered in advance of assessment was deposited by the district director in a suspense account.

Respondent's position is that the remittance prior to assessments of the deficiencies and interest did not constitute payment of interest, but was a mere deposit pending the determination of both the liability and the amount of additional taxes for 1948. He contends that both the existence and the amount of the corporation's liability for 1948 deficiencies were in dispute at the end of 1955 until settlement in 1956, so that in 1955 there was no payment of interest, and that his position is consistent with the principle stated in *Rosenman* v. *United States*, 323 U.S. 658; *Lewyt Corp.* v. *Commissioner*, 215 F. 2d 518, modified on another issue 349 U.S. 237; and *Fred J. Arheit*, 31 T.C. 46.

We agree with the respondent.

There was a dispute with the Commissioner about whether the sale in 1948 of the Magoro Corp. note was a transaction which resulted in capital gain rather than ordinary income, and whether the failure to file a personal holding company return for 1948 was due to reasonable cause and not to willful neglect. The dispute, which arose in June 1953, necessarily required consideration by the parties of the

provisions of the 1939 Code dealing with the tax on personal holding companies, secs. 501, 502(b), and 506. There is no proof that before the end of 1955 petitioner had indicated to the conferee or the agent that it would agree to assessment in 1955 of all or part of the proposed tax deficiencies for 1948 *even if* the agent determined that a penalty should be asserted. A clear inference is to be drawn from the entire record and all of the circumstances that petitioner would not agree in 1955 to a determination that its failure to file a personal holding company return for 1948 was due to willful neglect, and that any agreement on its part that ordinary gain and personal holding company income of $100,000 was realized upon the sale of the note was dependent upon respondent's not making a determination to that effect and not asserting a penalty. Section 506(f), 1939 Code, provides that no deficiency dividend credit shall be allowed under section 506(a) if there is a finding in a closing agreement, or a decision of this Court, or a judgment of another court that any part of the deficiency is due to fraud, or failure to file a personal holding company return within the time prescribed, unless it is shown that the failure to file such return was due to reasonable cause and not due to willful neglect. Unless petitioner could have declared a deficiency dividend for 1948 under section 506(c), it would have had to pay a 1948 personal holding company tax of $51,313.23, without any deficiency dividend credit under section 506(a) against the amount of the 1948 deficiency in personal holding company tax. It is obvious that any agreement to a deficiency in 1948 income tax was dependent upon whether petitioner could get a deficiency dividend credit against a deficiency in personal holding company tax. All aspects of the dispute about the gain from the sale of the Magoro note were interrelated.

It was not until 1956 that it became settled that a penalty for failure to file the particular return for 1948 would not be determined by respondent and until that factor was settled the amount of the proposed liability for 1948 taxes was not fixed in a definite amount because a penalty is an addition to the tax.

Upon the entire record, we have made the finding that "There could not be any agreement about anything, either treating the gain as ordinary income or the penalty, until the examining agent, Healey, made his final report and the corporation signed a Form 870." These events did not occur until April 1956. It is concluded that as of December 31, 1955, there was no agreement between the corporation and the respondent settling the dispute about 1948 tax deficiencies and the proposed penalty, and that in 1955 there had not come into existence, as the result of an agreement settling the dispute, an indebtedness, fixed as to liability and amount, with respect to 1948 income and personal holding company taxes. Because of that situation there was no assessment in 1955.

It is now well established that a remittance which is credited to a collector's suspense account does not constitute a payment of tax. *Rosenman* v. *United States, supra; Lewyt Corp.* v. *Commissioner, supra; Rose* v. *United States,* 256 F. 2d 223, reversing 151 F. Supp. 514; *Budd Co.* v. *United States,* 252 F. 2d 456; *United States* v. *Dubuque Packing Co.,* 233 F. 2d 453, 460; *Busser* v. *United States,* 130 F. 2d 537. A collector's suspense account is a separate internal bookkeeping account maintained for the purpose of recording identified remittances received with respect to additional taxes or interest which have been proposed or recommended for assessment *but have not been assessed.* "Money held in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Rosenman* v. *United States, supra.* Interest does not accrue and is not owing by the Government on the amount deposited to a suspense account which proves to be in excess of the amount of the tax eventually assessed. *Busser* v. *United States, supra.* For the same reasons which underlie the above, if the amount of the tax and interest which eventually is assessed is less than the total sum which was deposited to a suspense account, the excess will be refunded to the taxpayer by the collector on the basis of a credit memorandum issued by the collector to a disbursing agent, without the taxpayer's filing a claim for refund.

At the end of 1955, respondent's agents had made informal recommendations but the final report of the agent in charge had not been completed and the respondent had not concluded that a penalty would not be determined for failure to file a personal holding company return for 1948. The corporation at the end of 1955 voluntarily tendered to the district director $20,000, which it estimated would represent part of the interest which would be assessed when tax deficiencies for 1948 were assessed. But as of December 30, 1955, the corporation did not enter into an agreement with the Commissioner establishing his liability for any additional taxes and interest. It could not obtain such agreement at the end of 1955 because the dispute about the proposed penalty had not been concluded and presumably the corporation would not agree to a liability for additional taxes until the Commissioner agreed not to determine the penalty. The facts here closely resemble those in the *Arheit* case.

The corporation did not request the district director to make any assessment in 1955 of any tax for 1948 and interest; none had been made prior to the remittance, and none was made in 1955. The district director deposited the remittance in a suspense account thereby treating it as a deposit in the nature of a cash bond. Deficiencies and interest were not assessed until June 8, 1956, at which time the district director set up two open accounts for assessed deficiencies for 1948

for income tax and interest and personal holding company tax and interest. Thereafter, in 1956, he transferred on his books the $20,000 from the unclassified suspense account to the 1948 personal holding company tax deficiency account and credited interest with the above sum.

We are unable to conclude that the remittance to the district director on December 30, 1955, was a payment of interest. The district director was not under a duty in 1955 to regard the voluntary remittance as payment of interest on a liability for a tax deficiency. As was observed in *Lewyt Corp.* v. *Commissioner, supra* at 522:

A remittance made in respect of an asserted or putative tax liability in no proper sense constitutes a tax "payment" except to the extent that it is effective to discharge such liability in whole or in part. That in turn depends upon the agreement of the taxpayer and the Commissioner or his representatives, acting within their powers, or upon whether the taxing authorities have a duty under the particular circumstances involved to accept the remittance as a payment of the tax in full or *pro tanto.*

Petitioner is not entitled in 1955 to a deduction of $20,000 as interest paid on indebtedness under section 163 (a). *Rosenman* v. *United States, supra; Lewyt Corp.* v. *Commissioner, supra; Rose* v. *United States, supra; Fred J. Arheit, supra.*

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

MULRONEY, *J.*, dissenting: The only burden any taxpayer has under the interest deduction statute is to show, (1) the existence of an indebtedness during the year in question, and (2) that he made the payment that year sought as a deduction to the creditor which was directed to, or should have been applied to, the payment of interest on said indebtedness.

We said in *First National Co.*, 32 T.C. 798, 807, that the word "indebtedness" in the interest deduction statute "means an existing, unconditional, and legally enforcible obligation for the payment of money." [1] An *indebtedness* can be a statutory or contractual obligation to pay money. For the purpose of the operation of the interest deduction statute respondent's position is that of any other creditor of the taxpayer.

Petitioner's first burden was to show the *existence* in the year 1955 of an obligation to pay the 1948 income and personal holding company taxes. Respondent on brief argues "no indebtedness existed in income

---

[1] Although this case was reversed on appeal on another issue, the Court of Appeals for the Sixth Circuit specifically approved our definition of the term "indebtedness" in the interest deduction statute. *First National Co.* v. *Commissioner*, 289 F. 2d 861, 865.

or personal holding company taxes * * * during the taxable year 1955."

I feel petitioner satisfied his burden of showing the existence in the year 1955 of his 1948 tax obligation. Respondent's assessment of June 8, 1956, is an admission that petitioner's indebtedness for 1948 taxes was then in *existence* and had been in existence for prior years back to 1948. The assessment did not bring the indebtedness into existence. The indebtedness for taxes arises annually by operation of the taxing statutes. Also the existence of the obligation to pay the tax does not depend upon a taxpayer's consent or agreement with the collector. The required unconditional and legally enforcible obligation to pay the 1948 taxes was created by the taxing statute. Respondent even collected interest on this 1948 tax indebtedness for the year 1955, and indeed for all of the years back to 1948. To uphold his argument that the 1948 tax indebtedness was not in existence in 1955 would be to say he collected interest on a debt for a year the debt was not in existence. It may well be that estoppel would lie against respondent in a case like this where respondent's status is that of a creditor with respect to the indebtedness on which the interest deduction is claimed.

It is incontestable that petitioner paid $20,000 interest in 1955 if the tax indebtedness to which the labeled interest payment was directed was then in existence. Respondent hardly argues otherwise. However, he does make some point of his deposit of the 1955 remittance in a suspense account.

Again it is well to note respondent's double role: He is a party to this litigation but he was also petitioner's creditor. For the purpose of the application of the interest deduction statute, the taxpayer's burden ends when he shows the existence of the indebtedness in the year in question and delivery in that year to his creditor of a check directed to the payment of interest on his debt. The taxpayer has no burden to show his creditor credited the payment to his interest liability. The interest deduction cannot be defeated by reason of the creditor's bookkeeping arrangement for handling the remittance. The interest deduction statute does not give any creditor, including respondent when he happens to be the creditor, the right to dictate the year of interest deduction by delaying the entry of credit on his records of an interest payment.

The cases cited by respondent where a suspense account deposit was of some significance are easily distinguishable. None of them involved the interest deduction statute where the respondent, if he is the creditor to whom the debt is owed, is cast in the role of any other creditor.

I feel *Fred J. Arheit*, 31 T.C. 46, which respondent states on brief is the case on which he "primarily relies" was wrongly decided. I would overrule it and allow the deduction.

FORRESTER and HOYT, *JJ.*, agree with this dissent.

