OPINION Fay, Judge: The parties are agreed that petitioners have paid to the district director an amount in excess of their tax liabilities. The only issue before us is when was the overpayment made. Petitioners take the position that the overpayment was made on August 31, 1954 (or September 7, 1954),[3] at which time the $1 million was remitted to the respondent. The respondent takes the position that no overpayment exists until petitioners’ tax liability is actually fixed by an assessment or by an agreement between the petitioners and the respondent. Since this Court is given jurisdiction to find an overpayment of taxes under section 6512(b) of the Internal Revenue Code of 1954 with respect to any year properly before it, and since the issue in this case concerns whether an overpayment exists as of a particular taxable year, we. conclude that we have jurisdiction in the instant proceedings; See Fred Draper, 32 T.C. 545, 555 (1959); Estate of Lawrence M. Colfelt, Jr., 35 T.C. 769, 772 (1961). The rule adhered to by this Court, which rule also represents the weight of authority, is that no overpayment exists with respect, to a particular fund until all or a part of that fund has been assessed or until the taxpayer acquiesces in the proposed deficiency or a part thereof and the deposited fund is allocated to the payment of the agreed deficiencies. Fred Draper, supra; Estate of Lawrence M. Colfelt, Jr., supra; James F. Keith, 35 T.C. 1130 (1961); Fred J. Arheit, 31 T.C. 46 (1958). See also Rosenman v. United States, 323 U.S. 658 (1945); Lewyt Corp. v. Commissioner, 215 F. 2d 518 (C.A. 2, 1954), affirming 18 T.C. 1245 (1952), reversed in part and affirmed in part on- other issues 349 U.S. 237 (1955); Atlantic Mutual Insurance Co. v. McMahon, 153 F. Supp. 48 (S.D.N.Y. 1957); United States v. Dubuque Packing Co., 233 F. 2d 453 (C.A. 8, 1956); Rose v. United States, 256 F. 2d 223 (C.A. 3, 1958); Thomas v. Mercantile Nat. Bank at Dallas, 204 F. 2d 943 (C.A. 5, 1953). See and cf. United States v. Consolidated Edison Co., 336 U.S. 380 (1961). Since no assessment was outstanding at the time of petitioners’ remittances, if petitioners are to prevail they must show that their remittances were made with the intention of satisfying an asserted tax liability. Lewyt Corp. v. Commissioner, supra; Fred J. Arheit, supra. The record discloses that the petitioners’ remittances were made prior to the issuance of both the 30-day letters and the statutory notices of deficiency, that as of August 31, 1954, the petitioners had no knowledge of the exact amount of their individual tax liabilities, and that the petitioners at the time they made the $1 million remittance to the respondent had no intention of acquiescing in the respondent’s proposed tax deficiencies. In view of these facts, we are unable to conclude that petitioners’ 1954 remittances satisfied an asserted tax liability. Petitioners contend, however, that the rule requiring an assessment or acquiescence, in an asserted tax liability before a remittance can constitute a payment is no longer apposite in view of section 6401(c) of the Internal Revenue Code of 1954. This section provides that— An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount' was paid. We believe petitioners’ reliance upon section 6401 (c) is misplaced. Section 3770(c) of the Internal Revenue Code of 1939, which is the predecessor to section 6401(c), was added to the Internal Revenue Code of 1939 by the Current Tax Payment Act of 1943. The latter act was designed primarily to collect taxes from wage earners and certain self-employed individuals as the income was earned and thus imposed a duty upon taxpayers to make payments before their actual tax liability became defined. The legislative history of section 3770 (c) indicates that Congress was cognizant of the fact that since taxpayers were now required to make payments to the Government before their liability was actually known, a situation could easily arise whereby a taxpayer might pay amounts to the Government in excess of his true liability. At this same time Congress was also aware of a current belief, which had been engendered by certain court decisions, that a payment could not result in an overpayment if no tax liability actually existed. As a result of these cases, doubts were being expressed that withholdings or estimated tax payments in excess of the tax liability even though made in good faith would not be overpayments and consequently would not earn interest. To put these doubts to rest, Congress added section 4(d) to the Current Tax Payment Act of 1943.[4] See H. Rept. Conf. Kept. No. 510, 78th Cong., 1st Sess., p. 48. In view of the above, it seems apparent that section 3770(c) was intended to apply only to payments made in good faith and in fulfillment of a specific statutory duty. It was obviously not intended to cover voluntary payments made prior to any determination of tax indebtedness. In accord: Murphy v. United States, 78 F. Supp. 236 (S.D. Cal. 1948); Manee v. United States, 97 F. Supp. 993 (S.D.N.Y. 1951); Dubuque Packing Co. v. United States, 126 F. Supp. 796 (N.D. Iowa 1954), affd. 233 F. 2d 453 (C.A. 8, 1956); Atlantic Mutual Insurance Co. v. McMahon, supra. Although the Court of Claims takes a contrary view with respect to the effect of section 3770(c), now section 6401(c), Reading Co. v. United States, 98 F. Supp. 598 (Ct. Cl. 1951); Hanley v. United States, 63 F. Supp. 73 (Ct. Cl. 1945), we believe the position adopted by this Court more clearly reflects the intention of Congress. Finally, petitioners urged on brief, although they failed to raise the issue in their pleadings, that the respondent should be estopped from denying that they are entitled to interest on their 1954 remittances, since at the time such remittances were being discussed respondent’s agents assured them that they would receive interest on the amounts deposited. Estoppel is an issue that must be specifically pleaded. Estate of Thomas E. Steere, 22 T.C. 79, 82 (1954), affirmed sub nom. Rhode Island Hosp. Tr. Co. v. Commissioner, 219 F. 2d 923 (C.A. 1, 1955); Lodi Iron Works, Inc., 29 T.C. 696, 702 (1958). In any event, even if the issue were properly before us, estoppel would not be available here as a defense for two reasons. First, a taxpayer’s right to interest depends not on an administrative prerogative but on statutory authority. See sec. 6611, I.R.C. 1954. Such being the case, if respondent’s agents stated that petitioners were entitled to interest on their remittances, the statement was one of law and not of fact. To give rise to an estoppel the misrepresentation must be one of fact. City Machine & Tool Co., 21 T.C. 937, 951 (1954); Darling v. Commissioner, 49 F. 2d 111 (C.A. 4, 1931), affirming 19 B.T.A. 337 (1930), certiorari denied 283 U.S. 866 (1931); Gaylord v. Commissioner, 153 F. 2d 408 (C.A. 9, 1946), affirming 3 T.C. 281 (1944). Second, it is a prerequisite to the assertion of an estoppel claim that the so-called aggrieved party must have relied on the misrepresentations to his detriment. City Machine & Tool Co., supra; Lodi Iron Works, Inc., supra; Tide Water Oil Co., 29 B.T.A. 1208 (1934). In the instant case, petitioners testified unequivocally that they paid the $1 million to the Government in order to forestall a jeopardy assessment and the appointment of a receiver. Since the threat of a jeopardy assessment and not the promise of interest provoked the deposit, we fail to see how respondent’s alleged statements as to interest caused petitioners in reliance thereon to act to their detriment. Accordingly, we conclude that petitioners’ remittances here did not constitute a payment of tax until such time as the petitioners agree to, or acquiesce in, the asserted tax deficiencies. Decisions will he entered under Bule 50. September 7, 1954, was the date on which Alfred Fortugno’s checlc for $125,000 was received by the respondent. Sec. 3770(c), I.R.C. 1939.