ALFONZO L. DOWELL and VIVIAN T. DOWELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dowell v. Commissioner
Docket No. 2150-75.
United States Tax Court
T.C. Memo 1980-515; 1980 Tax Ct. Memo LEXIS 70; 41 T.C.M. (CCH) 390; T.C.M. (RIA) 80515; November 20, 1980, Filed Stephen Jones,Julius M. Greisman, and Nancy S. Abramowitz, for the petitioners. William D. Brackett, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: This case is on remand from the Court of Appeals for the Tenth Circuit. The circuit court, 614 F.2d 1263 (1980), reversing our decision in 68 T.C. 646 (1977), held that the filing of a nonfraudulent amended return starts the running of the statute of limitations under section 6501(a)[1] and that respondent's notice of deficiency for the years *72 1963 through 1966, mailed over six years after the filing of petitioners' amended nonfraudulent returns, was therefore untimely. Petitioners filed a motion for this Court to enter a decision that no deficiency exists for 1965 and that petitioners are entitled to refunds for the following overpayments: Year
Overpayment
1963
$2,579.18
1964
3,703.76
1966
2,027.38
Respondent objected to petitioners' Motion for Entry of Decision and filed a motion urging us to enter a decision that there are no deficiencies due from nor overpayments due to petitioners for the taxable years 1963 through 1966. The sole issue for our determination at this time is whether petitioners are entitled to overpayments for 1963, 1964, and 1966. The facts of this case are fully stipulated. Most of the facts relevant to this issue appear in our earlier decision but for the sake of clarity and continuity, we will repeat them briefly as well as newly enunciate those facts in the stipulated record that are only pertinent here. Petitioners *73 filed fraudulent original returns for 1963 through 1966 which showed the following tax liabilities: Year
Liability
1963
$160.13
1964
59.63
1965
80.04
1966
339.23
On September 13, 1968 for the years 1965 and 1966 and on November 25, 1968 for the years 1963 and 1964, petitioners filed amended nonfraudulent returns which showed the following additional tax liabilities: Year
Additional Liability
1963
$2,579.18
1964
3,703.76
1965
2,111.33
1966
2,027.38
Attached to petitioners' amended returns were remittances for these amounts and each amended return is marked "Received with Remittance" by the Internal Revenue Service. A statement identical in all material respects to the following was attached to each of petitioners' amended returns: Payment attached to this amended 1963 return, is hereby made under protest. We feel that the amount of deposits in question represents funds received for political purposes and gifts. These funds were used for political purposes. We hope and feel that eventually we will be able to get a more precise record of these funds. On December 11, 1964, respondent mailed petitioners a notice of deficiency. *74 In the statement schedule, only the additional amount of $2,111.33 submitted with petitioners' 1965 amended return is shown as having been credited to petitioners' account. The remaining $8,310.32 which was submitted with petitioners' amended returns for 1963, 1964, and 1966 was not so applied; rather, these remittances were held by respondent in a suspense account. In petitioners' petition filed with this Court on March 11, 1975, petitioners include among facts upon which they rely as the basis for their case the assertion that: 5C. The amended delinquent returns for the four years were submitted with cash remittances of $8,310.32. The remittances submitted with the returns were not credited to other tax deficiencies which the Internal Revenue Service has since taken collection action on and it has been necessary for the taxpayers to make payment in full of these other liabilities, the Commissioner having applied, prior to any notice of deficiency, the cash remittances accompanying the amended delinquent returns as being tax paid that applies to the tax liability indicated on said amended delinquent returns, all in accord with the income tax self-assessment system. In their *75 reply submitted to this Court on June 2, 1975, petitioners maintained: 5.AS TO RETURNS FILED UNDER PROTEST: A. The allegation in paragraph 5.B. of the Respondent's Answer alleges that the amended returns for the years 1963, 1964, 1965, and 1966 were filed under protest is not true. These returns were not filed under protest. Payment of the tax was made under protest in that the tax advisor obviously had a concern over prior tax law that required payment to be made under protest as a requisite to a later refund claim. Finally, in the stipulation of facts, the parties stipulated that: 25. Petitioners do not contest respondent's determination of taxable income and income tax liabilities, together with additions to the taxes, for their taxable years 1963, 1964, 1965, and 1966, as set forth in the statutory notice of deficiency. Petitioners maintain that the remittances are overpayments which this Court has jurisdiction to refund to them. Their argument is rooted in their interpretation of Rosenman v. United States,323 U.S. 658 (1945) that there is no payment upon a remittance to a suspense account. Petitioners assert that since respondent placed $8,310.32 *76 in a suspense account and did not assess petitioners' 1963, 1964, and 1966 amended returns until September 26, 1977, payment was not made until that time. Respondent, by contrast, contends that the remittances attached to petitioners' amended returns were payments in 1968 because petitioners intended to satisfy defined tax liabilities. If the remittances are held to be payments, respondent proceeds with his argument, since they are not in excess of petitioners' tax liabilities, were not erroneously or illegally collected, and did not cause the Government to be enriched unjustly, respondent can retain the remittances. Finally, respondent argues that the amounts shown on the face of the amended returns are not to be reduced by reason of the statements of protest attached to the returns.
We hold for the respondent. Section 6512(b)(1) confers jurisdiction on this Court to determine an overpayment which is refundable to the taxpayer when the Tax Court decision becomes final. [2]Section 6512(b)(2) limits this amount to only that portion paid either after the deficiency notice was mailed, *77 or within the period of limitations for filing a refund claim under section 6511(b)(2), (c), (d), or (g) which could have been refundable if on the date the notice of deficiency was mailed a claim had been filed, or under certain specific conditions where a timely refund claim was actually filed. In the instant case, therefore, since no refund claim was ever filed, we may only determine the existence of an overpayment refundable to petitioners if we find that the remittances were payments after December 11, 1972. [3]
*78 The record shows that petitioners' 1963, 1964, and 1966 returns were "assessed" on September 26, 1977. [4] We have repeatedly held, however, that an assessment is not a prerequisite to a payment. [5]Fortugno v. Commissioner,41 T.C. 316 (1963), affd. 353 F.2d 429 (3d Cir. 1965); Draper v. Commissioner,32 T.C. 545 (1959); Arheit v. Commissioner,31 T.C. 46 (1958).
*79 Where there has been no assessment, the test we have applied to determine when payment has been made is one drawn from Rosenman v. United States,supra. See, e.g. Fortugno v. Commissioner,supra;Lewyt Corp. v. Commissioner, 18 T.C. 1245 (1952), affd. 215 F.2d 518 (2d Cir. 1954). The Supreme Court, in Rosenman, held that a taxpayer's remittance which is coupled with a clear statement that the money was intended solely to avoid the accumulation of interest and penalties and which the Government placed in a suspense account does not constitute a payment. [6] Petitioners would have us read Rosenman as creating a rule that we look only to respondent's actions to determine the time a remittance becomes a payment. Petitioners argue that a taxpayer's "intentions in making a remittance are not controlling; at most they may bear upon what the Commissioner does with such remittance." Respondent, however, urges us to accept the converse: that petitioners' intent is the critical factor in determining when a payment *80 is made and that respondent's acts are of lesser significance. In Rosenman, there was a correspondence between the taxpayer's express intent to make a deposit and not a payment and the Commissioner's placing the remittance in a suspense account. Here, where there is no clear direction by the taxpayer that the remittance was made solely to avoid interest and penalties and where both petitioners' and respondent's actions have been inconsistent, [7] the parties wish us to decide the pivotal element of the two factors present in Rosenman. *81 We hold that it is a taxpayer's intentions which control the determination of whether a remittance is a deposit or a payment. [8] Although our decisions on this issue have sometimes referred to respondent's actions, we have always given his actions secondary emphasis and have used them as a means to interpret a taxpayer's intent. See, e.g. Fortugno v. Commissioner, supra.
Indeed, the Court of Appeals for the Tenth Circuit, to which an appeal in this case would lie, has indicated its position is consonant with the test we are applying herein. [9] In United States v. Miller, 315 F.2d 354, 356 (10th Cir. 1963), a case involving payment of estimated taxes, the court stated: *82 The manner in which the two checks were handled in the Director's office is not dispositive of the case. We express no opinion as to the validity or propriety of the procedures followed. As we appraise the situation, the unilateral actions of the Director made without the knowledge or acquiescence of the taxpayers do not determine whether the checks were voluntary remittances or were in discharge of an obligation imposed by the federal income tax statutes. Examining petitioners' intentions in 1968 when they filed amended returns for 1963, 1964, and 1966, we find that petitioners intended to discharge a defined tax liability and, therefore, that their remittances were payments in that year. Essentially, when a taxpayer files a return together with a remittance, the taxpayer is assumed to be making a payment at that time. [10] Courts have found two principal exceptions to this assumption: [11] (1) where a remittance is accompanied by a contest of liability for the tax, such as an express statement *83 that the remittance is being made solely for the purpose of avoiding interest and penalties, [12] or a remittance is concomitant with a claim for a refund [13] or an offer of compromise; [14] and (2) where the remittance is "disorderly" or "a dumping" in that there is no indication on the return of how the taxpayer arrived at his or her asserted tax liability. [15]
*84 In the instant case, petitioners' remittances accompanied their respective amended returns. They were not "disorderly" but clearly reflected the items of income and deductions asserted on these returns. Likewise, we find that petitioners did not contest their liabilities for 1963, 1964, and 1966. Firstly, petitioners' amended returns for the years in issue were not joined with claims for a refund. [16] Secondly, these returns were not accompanied by offers of compromise. Finally, no statement was attached to petitioners' amended return which would indicate that the remittances were being made solely to avoid interest and penalty charges. *85 The statement attached to each amended return at issue [17] indicated that a portion of petitioners' income represented funds received for political contributions or gifts and that they hoped eventually to substantiate this assertion. Yet, there is no further evidence that this protest was seriously pursued. No claim for a refund was ever filed. In the pleadings and in the stipulation of this case, moreover, there appears to be a disavowal or at least an abandonment of any contest. Petitioners' reply states these statements were never intended to be a protest but were intended to allow petitioners the option of filing refund claims should they later so desire. In addition, in paragraph 25 of the stipulation, petitioners agreed to respondent's calculation of their correct tax liabilities for all of the years 1963 through 1966. On the particular facts of the case, we hold that the remittances accompanying petitioners' amended returns *86 for 1963, 1964, and 1966 were payments prior to December 12, 1972. Consequently, we have no jurisdiction to determine the existence of any overpayments. Respondent's motion and petitioners' motion insofar as pertains to a finding of no deficiency for the taxable years 1963, 1964, 1965, and 1966 are, therefore, granted. In all other respects, as pertains to any overpayments, both petitioners' and respondent's motions are moot. An appropriate order will be entered. Footnotes
1. Al statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise stated.↩
2. To determine when a Tax Court decision has become final, see section 7481. The Tax Court will only consider the issue of whether or not there has been an overpayment where the question was appropriately raised in the taxpayer's petition. See Finen v. Commissioner,41 T.C. 557↩ (1964). In the instant case, petitioners' petition asserted two statute of limitations issues as the only issues in this case; however, their petition included a claim for a refund of $8,310.32.
3. Only payments made after December 11, 1972 would satisfy the requirements of section 6512(b)(2)(B); to satisfy the requirements of section 6512(b)(2)(A)↩, the payment would have had to have occurred after December 11, 1974, the date on which the notice of deficiency was mailed.
4. The term assessment is used here as it appears in section 6213(b)(4) since under section 6213(a) no other assessment could occur before this Court's decision is made final. Both parties agree that petitioners' 1965 return was assessed in 1968 upon receipt. ↩
5. Other courts have held that an assessment is required before a remittance may constitute a payment. See, e.g. United States v. Dubuque Packing Co.,233 F.2d 453 (8th Cir. 1956); Thomas v. Mercantile Nat. Bank at Dallas,204 F.2d 943 (5th Cir. 1953). While originally so holding, see Budd Co. v. United States,252 F.2d 456 (3d Cir. 1957); Compania Ron Carioca Destileria, Inc. v. United States,144 Ct. Cl. 66, 168 F.Supp. 546 (1958), the Court of Appeals for the Third Circuit as well as the Court of Claims now hold that an assessment is not a necessary precondition for a payment. See Richardson v. Smith,196 F.Supp. 432 (E.D. Pa. 1961), affd. per curiam 301 F.2d 305 (3d Cir. 1962); Hill v. United States,263 F.2d 885 (3d Cir. 1959); Rose v. United States,256 F.2d 223 (3d Cir. 1958); Northern Natural Gas Co. v. United States,173 Ct. Cl. 881, 354 F.2d 310 (1965); Charles Leich & Co. v. United States,165 Ct. Cl. 127, 329 F.2d 649 (1964); Moskowitz v. United States,152 Ct. Cl. 412, 285 F.2d 451 (1961). Similarly, the Second, Sixth, Seventh, and Tenth Circuits do not necessarily require an assessment before payment may occur. See, e.g. Ameel v. United States,426 F.2d 1270 (6th Cir. 1970); United States v. Miller,315 F.2d 354 (10th Cir. 1963); Colt's Manufacturing Co. v. Commissioner,306 F.2d 929 (2d Cir. 1962); Plankinton v. United States,267 F.2d 278↩ (7th Cir. 1959).
6. Applying this rule in Fortugno v. Commissioner, 41 T.C. 316 (1963), affd. 353 F.2d 429 (3d Cir. 1965), we stated, similarly: no overpayment exists with respect to a particular fund until all or a part of that fund has been assessed or until the taxpayer acquiesces in the proposed deficiency or a part thereof and the deposited fund is allocated to the payment of the agreed deficiencies. [citations omitted] 41 T.C. at 322↩.
7. Respondent, on receiving petitioners' amended 1965 return, assessed those amounts upon receipt and credited the amount to discharge petitioners' tax liability for that year. Under similar conditions, he placed the remittances accompanying petitioners' amended 1963, 1964, and 1966 returns in a suspense account. We can find no rationale for this disparate treatment although both parties seem to accept it. Petitioners have not claimed that respondent erroneously classified their amended 1965 return remittance as a payment in 1968. Respondent, on the other hand, attributes his placing the remittances for petitioners' amended 1963, 1964, and 1966 returns in a suspense account to his misinterpretation of the law regarding when the statute of limitations for petitioners' amended returns began to run; yet, that explanation is curious in light of his contradictory actions with regard to petitioners' amended 1965 return.↩
8. To hold otherwise would result in allowing the Commissioner to ignore a taxpayer's clear intention to make a payment and thereby discharge his or her tax liability or alternatively to make a deposit solely to avoid the accumulation of interest and penalties.↩
9. Likewise, the Courts of Appeal for the Third and Fifth Circuits have emphasized the importance of examining a taxpayer's intent rather than looking at the Commissioner's actions. See Binder v. United States, 590 F.2d 68 (3d Cir. 1978); Hill v. United States, supra; Thomas v. Mercantile Nat. Bank at Dallas,supra.↩
10. See United States v. Consolidated Edison Co. of N.Y.,366 U.S. 380 (1961); Essex v. Vinal, 499 F.2d 226 (8th Cir. 1974); Ameel v. United States, supra; Northern Natural Gas Co. v. United States, supra; Hill v. United States, supra. See also Shubert v. Commissioner, 41 T.C. 243↩ (1963), where we found that because a payment did not accompany a return, the taxpayer's intent to make a payment was unknown and, accordingly, the Commissioner was correct in placing the money in a suspense account. 11. For an elaboration of this point, see Northern Natural Gas Co. v. United States,supra↩ at 314-316. 12. See Rosenman v. United States, 323 U.S. 658 (1945); United States v. Consolidated Edison Co. of N.Y.,supra; Rose v. United States,supra; Estate of Colfelt v. Commissioner, 35 T.C. 769 (1961); Arheit v. Commissioner, 31 T.C. 46↩ (1958). 13. See, e.g. United States v. Consolidated Edison Co. of N.Y.,supra;Charles Leich & Co. v. United States, supra; Holmes v. Commissioner,47 T.C. 622↩ (1967). 14. See, e.g. Moskowitz v. United States, supra;Keith v. Commissioner, 35 T.C. 1130↩ (1961). 15. See, e.g. Budd Co. v. United States, supra↩.
16. A protest is not synonymous with a claim for a refund. Hollie v. Commissioner, 73 T.C. 1198 (1980); Hansen v. Commissioner, 9 T.C. 108 (1947). To determine whether a protest qualifies as a refund claim, the test to be applied is whether the protest statement advised the Commissioner in writing that a refund was being sought. Hollie v. Commissioner, supra↩ at 1212-1213. In the instant case, the statements attached to petitioners' 1963, 1964, and 1966 returns do not satisfy this requirement.
17. Petitioners' 1965 amended return contained virtually identical, if not the same, statement as the ones attached to the three amended returns at issue here. Yet, petitioners accede the remittance with this return was a payment in 1968.↩